ACCEPTED
15-25-00072-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
8/25/2025 4:56 PM
CHRISTOPHER A. PRINE
CLERK

NO. 15-25-00072-CV

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
8/25/2025 4:56:55 PM
CHRISTOPHER A. PRINE
Clerk

IN THE COURT OF APPEALS
FOR THE FIFTEENTH DISTRICT OF TEXAS
AUSTIN, TEXAS

FRANCES SPANOS SHELTON,

*Appellant,*

v.

VERNON LEUSCHNER, ROBERT LEE SPANOS, CHRISTOPHER BLAKE
SPANOS, KATHRYN NICOLE LAWRIE, AND KATHERINE LEUSCHNER,

*Appellees.*

Interlocutory Appeal from the 414th Judicial District Court, McLennan County,
Texas, Cause No. 2024-3035-5, Hon. Ryan Luna, Presiding

**JOINT BRIEF OF APPELLEES**

ANGUS "ANDY" E. MCSWAIN
State Bar No. 13861100
*mcswain@thetexasfirm.com*
MARK E. FIRMIN
State Bar No. 24099614
*firmin@thetexasfirm.com*
SAMEER HASHMI
State Bar No. 24101877
*hashmi@thetexasfirm.com*
**BEARD KULTGEN BROPHY
BOSTWICK & DICKSON, PLLC**
220 South Fourth Street
Waco, Texas 76701
Telephone: 254-776-5500
Facsimile: 254-776-3591

JIM DUNNAM
State Bar No. 06258010
*jimdunnam@dunnamlaw.com*
ANDREA MEHTA
State Bar No. 24078992
*andreamehta@dunnamlaw.com*
MASON VANCE DUNNAM
State Bar No. 24108079
*masondunnam@dunnamlaw.com*
**DUNNAM & DUNNAM LLP**
4125 West Waco Drive
Waco, Texas 76710
(254) 753-6437
(254) 753-7434 (fax)

# IDENTIFICATION OF PARTIES AND COUNSEL

**Appellant Frances Spanos Shelton**

Appellate Counsel:                Kirk L. Pittard
                                  State Bar No. 24010313
                                  kpittard@dpslawgroup.com
                                  Rick Thompson
                                  State Bar No. 00788537
                                  rthompson@dpslawgroup.com
                                  DURHAM, PITTARD & SPALDING, LLP
                                  P.O. Box 224626
                                  Dallas, Texas 75222
                                  (214) 946-8000
                                  (214) 946-8433 (fax)

Trial and Appellate Counsel:      Craig D. Cherry
                                  State Bar No. 24012419
                                  ccherry@cjsjlaw.com
                                  Ryan C. Johnson
                                  State Bar No. 24048574
                                  rjohnson@cjsjlaw.com
                                  Scott H. James
                                  State Bar No. 24037848
                                  sjames@cjsjlaw.com
                                  M. Katie Quillen
                                  State Bar No. 24133047
                                  kquillen@cjsjlaw.com
                                  CHERRY JOHNSON SIEGMUND
                                  JAMES, PLLC
                                  7901 Fish Pond Road, 2nd Floor
                                  Waco, Texas 76710
                                  (254) 732-2242

**Appellee Vernon Leuschner (for and on behalf of Katherine Leuschner)**

Trial and Appellate Counsel:      Andy E. McSwain
                                  State Bar No. 1361100
                                  mcswain@thetexasfirm.com
                                  Mark E. Firmin

State Bar No. 24099614
firmin@thetexasfirm.com
Sameer Hashmi
State Bar No. 24101877
hashmi@thetexasfirm.com
BEARD KULTGEN BROPHY BOSTWICK
& DICKSON PLLC
220 South Fourth Street
Waco, Texas 76701
(254) 776-5500
(254) 776-3591 (fax)

**Appellees Robert Lee Spanos, Christopher Blake Spanos, and Kathryn Nicole Lawrie**

Trial and Appellate Counsel:    Jim Dunnam
State Bar No. 06258010
jimdunnam@dunnamlaw.com
Andrea Mehta
State Bar No. 24078992
andreamehta@dunnamlaw.com
Mason Vance Dunnam
State Bar No. 24108079
masondunnam@dunnamlaw.com
DUNNAM & DUNNAM LLP
4125 West Waco Drive
Waco, Texas 76710
(254) 753-6437
(254) 753-7434 (fax)

# TABLE OF CONTENTS

IDENTIFICATION OF PARTIES AND COUNSEL ........................................... ii

TABLE OF CONTENTS ................................................................. iv

INDEX OF AUTHORITIES .............................................................. ix

RECORD REFERENCES ................................................................. xv

PARTY REFERENCES .................................................................. xv

STATEMENT OF THE CASE ............................................................ xvi

RESPONSE TO STATEMENT ON JURISDICTION ........................................... xix

RESPONSE TO APPELLANT'S STATEMENT ON ORAL ARGUMENT ...... xx

RESPONSE TO ISSUES PRESENTED ..................................................... xxi

STATEMENT OF FACTS ................................................................ 1

    1. Family Background ............................................................. 1

        a. Dorothy Trust ............................................................ 1

    2. Spanos Ranch and Front 45 .................................................... 2

        a. Trust Distributions...................................................... 2

        b. Front 45 Acres to be sold ............................................... 3

    3. Trust Administration History Concerning the Front 45 ......................... 4

        a. Fran's Improper Attempt to Benefit Own Family .......................... 4

        b. Judge Stem Immediately Encounters Controversy .......................... 5

        c. Judge Stem Overrules Fran's Front 45 Effort to Benefit Her Child ........ 6

d. Fran Refuses Access Easements ................................................. 6

e. Judge Stem Removes Fran ..................................................... 7

f. Undue Delay Because Fran Insists on Undue Benefit ............................. 8

4. Fran Sues Mr. Malone in District Court, and Mr. Malone Resigns ............... 9

5. Judge Luna Appoints a Receiver to Carry Out the Long Overdue Sale of the Front 45 .................................................................... 10

6. Undecided Motion to Re-Affirm .................................................. 12

7. Receivership Hearing .......................................................... 13

SUMMARY OF THE ARGUMENT ...................................................... 14

ARGUMENT ..................................................................... 18

Issue 1: Was the District Court's appointment of a Receiver an abuse of discretion when the District Court heard evidence of Appellant's breaches of trust and evidence that the only way to carry out the Trust's terms and protect the Trust's assets was to appoint a Receiver, and additionally considered the record? In Response to Appellant's Issue No. 1. ........................................ 18

Issue 5: Whether the District Court's findings and conclusions in the Order Appointing Receiver are supported by any legally sufficient evidence. As framed by Appellant. ............................................................... 18

1. Judge Luna did not abuse his discretion in appointing a Receiver. ............. 19

A. Standard of review for appointment of receiver. ................................ 19

B. Judge Luna had discretion to appoint a Receiver under the Texas Property Code. ......................................................................... 21

C. Judge Luna also had discretion to appoint a Receiver under the rules of equity. ........................................................................ 23

Issue 6: Whether the District Court's Order Appointing Receiver, which requires Fran, who is neither a Trustee nor signatory on the Trust's bank accounts, to pay all expenses incurred by the Trust in the ordinary course of business results in an unconstitutional taking of Fran's personal property. As framed by Appellant. ............................................................................................... 25

Issue 7: Whether the District Court abused its discretion by issuing its Order Appointing Receiver, which enjoined Fran from exercising her statutory right to challenge the rulings of the District Court and the actions of the receiver. As framed by Appellant. ...................................................................... 26

2. Judge Luna's Order is neither overbroad nor does it restrict Appellant's rights. ............................................................................................... 26

    A. The Order does not restrict Appellant's ability to enforce her legal rights. ....................................................................................... 26

    B. The Order is not an unconstitutional taking of Fran's property. ........... 27

Issue 3: Does the County Court at Law's March 2022 Order and subsequent Agreed Orders appointing Judge Robert Stem as Trust Advisor and Temporary Administrator of the Spanos Estate preclude the District Court from appointing Aubrey Williams as Receiver if Judge Stem testifies at the evidentiary hearing on the Motion to Appoint Receiver? ............................................................ 28

3. Judge Luna's Order does not incorporate or enforce any prior orders. ........ 28

Issue 4.A: Whether the County Court at Law's earlier Orders are merely voidable and cannot be collaterally attacked? ............................................... 32

Issue 4.B: Is Appellant's collateral attack on the County Court at Law's March 2022 Order and subsequent Agreed Orders appointing Judge Stem as Trust Advisor and Temporary Administrator of the Spanos Estate ripe for appeal when the District Court has not yet ruled on the issue and no statute allows for interlocutory appeal of the denial of a motion to appoint a trustee? In Response to Appellant's Issue No. 3. ............................................................ 32

Issue 4.C: If Appellant's collateral attack is ripe for appeal, should the Court set aside the County Court at Law's March 2022 Order and subsequent Agreed Orders appointing Judge Stem as Trust Advisor and Temporary Administrator of

the Spanos Estate and undo three years of trust of administration when: (1) the Agreed Orders state that the County Court at Law had jurisdiction; (2) the County Court at Law matter is still pending; and (3) Appellant has not timely appealed those orders directly or moved the County Court at Law to set aside the Orders? In Response to Appellant's Issue No. 3. .......................................................... 32

Issue 4.D: Did the County Court at Law have subject matter jurisdiction via original probate jurisdiction and ancillary jurisdiction to issue the March 2022 Order and subsequent Agreed Orders appointing Judge Stem as Trust Advisor and Temporary Administrator of the Spanos Estate? In Response to Appellant's Issue No. 3. .............................................................................................. 33

4. The Court has no jurisdiction to consider Appellant's collateral attack on the County Court at Law's prior orders; even if the Court did, Appellant's collateral attack fails on the merits. ..................................................................... 33

    A. Appellant's collateral attack is not ripe for appeal. ............................... 33

    B. Appellant cannot collaterally attack the County Court at Law's prior orders because they are not void; they are, at best, voidable. .................... 34

    C. Nevertheless, the County Court at Law had jurisdiction to appoint Judge Stem as Trust Advisor. ................................................................. 36

        i. The County Court at Law had jurisdiction over the Trust claims through ancillary jurisdiction. ......................................................................... 36

        ii. Appellant has not met her burden to show that the amount in controversy is not met. ......................................................................... 40

        iii. The County Court at Law never lost jurisdiction. ........................... 41

        iv. The doctrines of waiver and estoppel bar Appellant's collateral attack. ..................................................................................................... 45

CONCLUSION AND PRAYER FOR RELIEF ................................................... 46

CERTIFICATE OF SERVICE ........................................................................... 48

CERTIFICATE OF COMPLIANCE .................................................................. 50

APPENDIX TO JOINT BRIEF OF APPELLEES ................................................. 51

# INDEX OF AUTHORITIES

**Cases**

*1st & Trinity Super Majority, LLC v. Milligan,*
657 S.W.3d 349 (Tex. App.—El Paso 2022, no pet.) .......................... 25, 27

*Akers v. Simpson,*
445 S.W.2d 957 (Tex. 1969) ....................................................... 17

*Alexander v. Alexander,*
373 S.W.2d 800 (Tex. App.—Corpus Christi 1963, no writ) .................... 46

*Alpert v. Gerstner,*
232 S.W.3d 117 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) ........ 25

*Astoria Indus. of Iowa, Inc. v. SNF, Inc.,*
223 S.W.3d 616 (Tex. App.—Fort Worth 2007, pet. denied) .................... 32

*Bailey v. Cherokee Cnty. Appraisal Dist.,*
862 S.W.2d 581 (Tex. 1993) ....................................................... 43

*Bally Total Fitness Corp. v. Jackson,*
53 S.W.3d 352 (Tex. 2001) ....................................................... 32

*Bass v. Waller Cnty. Sub-Reg'l Planning Comm'n,*
514 S.W.3d 908 (Tex. App.—Austin 2017, no pet.) ........................... xix, 34

*Bland Indep. Sch. Dist. v. Blue,*
34 S.W.3d 547 (Tex. 2000) ....................................................... 36

*Bocquet v. Herring,*
972 S.W.2d 19 (Tex. 1998) ....................................................... 19

*Butnaru v. Ford Motor Co.,*
84 S.W.3d 198 (Tex. 2002) ....................................................... 19

*Citizens Bank & Tr. Co. of Baytown v. Ertel,*
No. 01-98-00548-CV, 2001 WL 26141
(Tex. App.—Houston [1st Dist.] Jan. 11, 2001, pet. denied) .................... 42

*Clarke as Next Friend of B.D.C. v. Wolf*,
    No. 14-24-00226-CV, 2025 WL 1688422
    (Tex. App.—Houston [14th Dist.] June 17, 2025, no pet. h.) ..................... 27

*CMH Homes v. Perez*,
    340 S.W.3d 444 (Tex. 2011) ............................................................... 32

*Coburn v. Moreland*,
    433 S.W.3d 809 (Tex. App.—Austin 2014, no pet.) .................................. 20

*Conner v. Guemez*,
    No. 02-10-00211-CV, 2010 WL 4812991
    (Tex. App.—Fort Worth Nov. 24, 2010, no pet.) ........................................ 27

*Crosstex Energy Services., L.P. v. Pro Plus, Inc.*,
    430 S.W.3d 384 (Tex. 2014) ............................................................... 39

*C.S.C.S., Inc. v. Reese*,
    No. 05-96-01112-CV, 1997 WL 142746
    (Tex. App.—Dallas Mar. 31, 1997, no writ) ............................................. 29

*Dallas Cnty. v. Halsey*,
    87 S.W.3d 552 (Tex. 2002) ................................................................. 27

*Delcourt v. Silverman*,
    919 S.W.2d 777 (Tex. App.—Houston [14th Dist.] 1996, writ denied) ..... 27

*Elliott v. Elliott*,
    208 S.W.2d 709 (Tex. App.—Fort Worth 1948, writ ref'd n.r.e.) .............. 43

*Elliott v. Weatherman*,
    396 S.W.3d 224 (Tex. App.—Austin 2013, no pet.) .................................. 25

*English v. Cobb*,
    593 S.W.2d 674 (Tex. 1979) ............................................................... 40

*Estate of Benson*,
    No. 04-15-00087-CV, 2015 WL 5258702
    (Tex. App.—San Antonio Sept. 9, 2015, pet. dism'd) ............................... 25

*Estate of Hoskins*,
    501 S.W.3d 295
    (Tex. App.—Corpus Christi–Edinburg 2016, no pet.) ......................... 21, 31

*Estate of Price*,
    528 S.W.3d 591 (Tex. App.—Texarkana 2017, no pet.) ........................... 25

*Fawcett v. Rogers*,
    492 S.W.3d 18 (Tex. App.—Houston [1st Dist.] 2016, no pet.) .......... 32, 34

*French v. Moore*,
    169 S.W.3d 1 (Tex. App.—Houston [1st Dist.] 2004, no pet.) ................... 36

*Gonzalez v. Gonzalez*,
    469 S.W.2d 624 (Tex. App.—Corpus Christi 1971, writ ref'd n.r.e.) ........ 23

*Gonzalez v. Villarreal*,
    251 S.W.3d 763 (Tex. App.—Corpus Christi 2008, pet. dism'd) .............. 20

*Goodman v. Summit at W. Rim, Ltd.*,
    952 S.W.2d 930 (Tex. App.—Austin 1997, no pet.) ............................ 42, 43

*Hawkins v. Twin Montana, Inc.*,
    810 S.W.2d 441 (Tex. App.—Fort Worth 1991, no writ) .......................... 23

*In Interest of M.L.G.J.*,
    No. 14-14-00800-CV, 2015 WL 1402652
    (Tex. App.—Houston [14th Dist.] Mar. 24, 2015, no pet.) ................... 17, 45

*In Interest of R.V., Jr.*,
    977 S.W.2d 777 (Tex. App.—Fort Worth 1998, no pet.) .......................... 30

*In re A.G.G.*,
    267 S.W.3d 165 (Tex. App.—San Antonio 2008, pet. denied) .................. 35

*In re D.L.S.*,
    No. 05-08-00173-CV, 2009 WL 1875579
    (Tex. App.—Dallas July 1, 2009, no pet.) ................................................. 35

*In re Estate of Hallmark*,
629 S.W.3d 433 (Tex. App.—Eastland 2020, no pet.) ................................ 37

*In re Estate of Hanau*,
806 S.W.2d 900
(Tex. App.—Corpus Christi-Edinburg 1991, writ denied) ......................... 43

*In re Estate of Herring*,
983 S.W.2d 61 (Tex. App.—Corpus Christi–Edinburg 1998, no pet.) ....... 19

*In re Estate of Trevino*,
195 S.W.3d 223 (Tex. App.—San Antonio 2006, no pet.) ................... 15, 23

*In re Harrison*,
No. 14-15-00370-CV, 2015 WL 5935816
(Tex. App.—Houston [14th Dist.] Oct. 13, 2015, no pet.) .................... 30, 31

*In re McCray*,
No. 05-13-01195-CV, 2013 WL 5969581
(Tex. App.—Dallas Nov. 7, 2013, no pet.) ................................................ 31

*In re TDC*,
91 S.W.3d 865 (Tex. App.—Fort Worth 2002, pet. denied) ...................... 20

*In the Interest of D.C.*,
No. 13–15–00486–CV, 2016 WL 3962713
(Tex. App.—Corpus Christi–Edinburg July 21, 2016, no. pet. h.) ............. 20

*Koonce v. Brite Estate*,
663 S.W.2d 451 (Tex. 1984) ................................................................. 8, 14

*Low v. State*,
No. 2-03-347-CV, 2005 WL 1120013
(Tex. App.—Fort Worth May 12, 2005, no pet.) ....................................... 25

*Mays v. Pierce*,
281 S.W.2d 79 (Tex. 1955) ..................................................................... 29

*Mendoza v. United States,*
    481 F.Supp.2d 643 (W.D. Tex. 2006) *aff'd. sub nom.*
    532 F.3d 342 (5th Cir. 2008) ...................................................................... 43

*Moody Nat'l Bank v. Moody*,
    No. 14-21-00096-CV, 2022 WL 14205534
    (Tex. App.—Houston [14th Dist.] Oct. 25, 2022, pet. denied) ................... 25

*Narvaez v. Powell*,
    564 S.W.3d 49 (Tex. App.—El Paso 2019, no pet.) .................................... 37

*Parsons v. Parsons*,
    648 S.W.3d 354 (Tex. App.—Texarkana 2021, pet. denied) .......... 17, 35, 44

*Sabine Gas Transmission Co. v. Winnie Pipeline Co.*,
    15 S.W.3d 199 (Tex. App—Houston [14th Dist.] 2000, no pet.) ............... 42

*Senior Care Living VI, LLC v. Preston Hollow Capital, LLC*,
    695 S.W.3d 446 (Tex. App.—Houston [1st Dist.] 2023, no pet.) ............... 27

*S.M.*,
    658 S.W.3d 876 (Tex. App.—El Paso 2022, no pet.) .................................. 45

*Solomon, Lambert, Roth & Associates, Inc. v. Kidd*,
    904 S.W.2d 896 (Tex. App.—Houston [1st Dist.] 1995, no writ) ............. 17

*Sotelo v. Scherr*,
    242 S.W.3d 823 (Tex. App.—El Paso 2007, no pet.) ................................. 35

*Spiritas v. Davidoff*,
    459 S.W.3d 224 (Tex. App.—Dallas 2015, no pet.) ................................... 19

*Tex. A&M Concrete, LLC v. Brae Burn Constr. Co., Ltd., L.L.P.*,
    651 S.W.3d 607 (Tex. App.—Houston [1st Dist.] 2022, no pet.) ............... 46

*Tex. Dep't of Parks & Wildlife v. Miranda*,
    133 S.W.3d 217 (Tex. 2004) ...................................................................... 40

*Tittizer v. Union Gas Corp.*,
    171 S.W.3d 857 (Tex. 2005) ...................................................................... 46

*Torres v. State*,
No. 08-19-00209-CR, 2021 WL 3400598
(Tex. App.—El Paso Aug. 4, 2021, no pet.) ................................................ 45

*Travelers Ins. Co. v. Joachim*,
315 S.W.3d 860 (Tex. 2010) ....................................................... 17

*Travelers Ins. Co. v. Williams*,
603 S.W.2d 258 (Tex. App.—Corpus Christi 1980, no writ) ..................... 46

*Valdez v. Valdez*,
930 S.W.2d 725 (Tex. App.—Houston [1st Dist.] 1996, no writ) .............. 20

## Statutes

Tex. Civ. Prac. & Rem. Code § 51.014 .................................................. xix, 16, 36

Tex. Civ. Prac. & Rem. Code § 54.014 .......................................................... xix, 34

Tex. Civ. Prac. & Rem. Code § 64.001 ........................................................... 15, 23

Tex. Estates Code § 31.002 .................................................................... 39

Tex. Estates Code § 32.001 .................................... 36, 37, 38, 39, 40, 42, 43, 44

Tex. Estates Code § 32.002 .................................................................... 37

Tex. Gov. Code § 25.0003 ............................................................... 36, 37

Tex. Prop. Code § 114.008 ........................................................... 15, 21

## Rules

Tex. R. App. P. 26.1 ....................................................................... 36

Tex. R. App. P. 33.1 ....................................................... xix, 17, 33, 45

Tex. R. App. P. 38.2 ..................................................................... xxi

## RECORD REFERENCES

The Clerk's Record will be cited by the abbreviation "CR" followed by the page number (e.g., CR.1). The Reporter's Record will be cited by the volume, the abbreviation "RR," and the page:lines (e.g., 2.RR.4:12-22). The evidentiary hearing exhibits are located in volume 3 of the Reporter's Record and will be cited by the volume, RR, and reference to the exhibit number.  (e.g., 3.RR.ExhibitI-1).

## PARTY REFERENCES

"*Appellant*" or "*Fran*" -  Frances Spanos Shelton

"*Appellees*" - Vernon Leuschner, Katherine Leuschner, Robert Lee Spanos, Christopher Blake Spanos, and Kathryn Nicole Lawrie

"*County Court at Law*" - County Court at Law No. 1 for McLennan County, Texas before the Hon. Judge Vikram Deivanayagam

"*District Court*" or "*Judge Luna*" - Hon. Judge Ryan Luna, 414th Judicial District Court of McLennan County

# STATEMENT OF THE CASE

**Nature of the Case:** The case concerns the second of two proceedings; together more than three years of litigation in two different forums, regarding the administration of the Dorothy Spanos Living Trust (the "Trust").

After more than three (3)years of inability to sell a certain approximately 45-acres of Trust property as required by the Trust (the "Front 45") due to breaches of fiduciary duty, and/or obstructive tactics by Appellant, in her role as Trustee and otherwise (including a suit Appellant initiated against the successor Trustee), the District Court appointed a Receiver for the limited purpose of facilitating the sale of the Front 45.[1]

This appeal challenges the limited appointment of the Receiver to sell the Front 45.

**Trial Court** Hon. Judge Ryan Luna, 414th Judicial District Court of McLennan County, Texas.

**Course of the Proceedings:** In September 2021, Dorothy Spanos ("Dorothy") died. Six months after Dorothy's death, Appellee Katherine Leuschner ("Kathy") initiated a probate matter in County Court at Law No. 1 for McLennan County, Texas before the Hon. Judge Vikram Deivanayagam ("County Court at Law").

At the time, Appellant was Trustee for the Trust, but had taken no action to probate Dorothy's Estate.

Pursuant to the Estates Code and the Trust's governing documents, the County Court at Law appointed Senior District Judge Robert Stem as

_____

[1] Which was to be sold "as soon as practicable" after the death of Dorothy in September 2021. CR.488.

Temporary Administrator of Dorothy's Estate and Trust Advisor to the Trustee of the Trust.

Appellant never objected to Judge Stem's appointment and, in fact, *twice* signed Agreed Orders extending Judge Stem's term as Trust Advisor.

A year into his role as Trust Advisor, Judge Stem removed Appellant as Trustee of the Trust pursuant to his authority under the Trust. Her removal was due to the obvious need for an independent, neutral, and detached Trustee, and Judge Stem testified that—while the removal did not expressly cite a cause—the Appellant had committed breaches of fiduciary duty, impacting her inability to be impartial.

Judge Stem appointed Waco attorney John Malone, (experienced in Real Estate) as successor Trustee. Mr. Malone announced his intent to publicly market and sell the Front 45. His announcement came after 18 months of discussions, including Appellant's refusal to allow Kathy to purchase the Front 45, and Appellant's unwillingness to purchase it herself with access easements to the remainder of the Spanos Ranch. Appellant/Fran then filed this suit against Mr. Malone in District Court, over the very things allowed—indeed required—by the Trust. Appellant sought to restrain Mr. Malone's ability to sell the Front 45 and grant easements.

Mr. Malone resigned as Trustee after Appellant sued him.

Appellees intervened and filed a Motion to Appoint Receiver to carry out the sale of the Front 45, as required by the Trust. Appellant separately filed a Motion to Re-Affirm and/or Designate Trustee of the Dorothy Spanos Living Trust ("Motion to Re-

Affirm") seeking to reappoint herself as Trustee of the Trust and to declare void the three years of agreed Trust administration by Judge Stem and Mr. Malone.

**Trial court disposition:** Judge Luna held an evidentiary hearing on the Motion to Appoint Receiver. He also heard arguments on the Motion to Re-Affirm. Judge Luna granted the Motion to Appoint Receiver and appointed Aubrey Williams as Receiver for the limited purpose of selling the Front 45. Judge Luna has not yet ruled on the Motion to Re-Affirm.

## RESPONSE TO STATEMENT ON JURISDICTION

Appellant's Statement of Jurisdiction is not only misleading, but wrong. Appellant conflates two different motions filed in the District Court: (1) Motion to Appoint Receiver; and (2) Motion to Re-Affirm in an attempt to force an appellate review of the Motion to Re-Affirm—on which there is *no ruling to appeal.*

Accordingly, the Court *only* has jurisdiction to consider Judge Luna's Order appointing a receiver. Tex. Civ. Prac. & Rem. Code ("CPRC") § 51.014(a). That jurisdiction includes the decision to appoint a receiver and the scope of the receiver Order.

The Court has no jurisdiction to entertain the remaining issues raised in Appellant's Brief. First, the Court has no jurisdiction to hear any issues regarding Appellant's Motion to Re-Affirm because Judge Luna has not yet ruled on the Motion to Re-Affirm. Therefore, the issues concerning Appellant's Motion to Re-Affirm are not ripe for appeal or properly before this Court. Tex. R. App. P. 33.1; *Bass v. Waller Cnty. Sub-Reg'l Planning Comm'n*, 514 S.W.3d 908, 915 (Tex. App.—Austin 2017, no pet.). Second, even if Judge Luna had denied the Motion to Re-Affirm, the Court still would have no jurisdiction to review the ruling because there is no right to interlocutory appeal for an order denying the appointment of a trustee. *See* CPRC § 54.014. Third, there is also no right to interlocutory appeal for an order denying a collateral attack on another court's jurisdiction. *See id.*

Finally, Appellees do not challenge this Court's jurisdiction to issue a writ of mandamus. However, Appellees note that Appellant's petition for writ of mandamus is blatant forum shopping. Appellant only filed the petition after the Texas Supreme Court transferred this appeal as a precursor to send this appeal back to the Tenth Court of Appeals. Interlocutory appeal was apparently an adequate remedy at law until the Court's transfer order. Although Appellees did not contest Appellant's motion to transfer, Appellees only did so to avoid continually spending inordinate attorneys' fees. But to be clear, Appellees do not endorse the motion to transfer or challenge the Supreme Court's transfer of this appeal to the Fifteenth Court of Appeals.

**RESPONSE TO APPELLANT'S STATEMENT ON ORAL ARGUMENT**

Despite Appellant's attempt to complicate the matter, the issue before the Court is straightforward and limited in scope of review given the procedural posture. Therefore, Appellees do not affirmatively request oral argument. Appellees, however, are eager and willing to aid the Court in any manner that the Court deems appropriate. Accordingly, while not affirmatively requesting such opportunity, Appellees are, of course, willing to provide oral argument or supply additional briefing should the Court so request.

**RESPONSE TO ISSUES PRESENTED[2]**

**Issue 1** Was the District Court's appointment of a Receiver an abuse of discretion when the District Court heard evidence of Appellant's breaches of trust and evidence that the only way to carry out the Trust's terms and protect the Trust's assets was to appoint a Receiver, and additionally considered the record? In Response to Appellant's Issue No. 1.

**Issue 2** Does the District Court's Order appointing Aubrey Wiliams as Receiver, which does not reference any prior orders and was issued after an evidentiary hearing, silently incorporate and enforce the County Court at Law's March 2022 Order and subsequent Agreed Orders appointing Judge Robert Stem as Trust Advisor and Temporary Administrator of the Spanos Estate? In Response to Appellant's Issue No. 2.

**Issue 3** Does the County Court at Law's March 2022 Order and subsequent Agreed Orders appointing Judge Robert Stem as Trust Advisor and Temporary Administrator of the Spanos Estate preclude the District Court from appointing Aubrey Williams as Receiver if Judge Stem testifies at the evidentiary hearing on the Motion to Appoint Receiver?

**Issue 4.A** Whether the County Court at Law's earlier Orders are merely voidable and cannot be collaterally attacked?

**Issue 4.B** Is Appellant's collateral attack on the County Court at Law's March 2022 Order and subsequent Agreed Orders appointing Judge Stem as Trust Advisor and Temporary Administrator of the Spanos Estate ripe for appeal when the District Court has not yet ruled on the issue and no statute allows for interlocutory appeal of the denial of a motion to appoint a trustee? In Response to Appellant's Issue No. 3.

---

[2] Appellees believe some of Appellant's Issues Presented do not fairly and accurately present the true issues in this appeal. Accordingly, Appellees restate the applicable Issues, pursuant to Texas Rule of Appellate Procedure 38.2.

**Issue 4.C**     If Appellant's collateral attack is ripe for appeal, should the Court set aside the County Court at Law's March 2022 Order and subsequent Agreed Orders appointing Judge Stem as Trust Advisor and Temporary Administrator of the Spanos Estate and undo three years of trust administration when: (1) the Agreed Orders state that the County Court at Law had jurisdiction; (2) the County Court at Law matter is still pending; and (3) Appellant has not timely appealed those orders directly or moved the County Court at Law to set aside the Orders? In Response to Appellant's Issue No. 3.

**Issue 4.D**     Did the County Court at Law have subject matter jurisdiction via original probate jurisdiction and ancillary jurisdiction to issue the March 2022 Order and subsequent Agreed Orders appointing Judge Stem as Trust Advisor and Temporary Administrator of the Spanos Estate? In Response to Appellant's Issue No. 3.

**Issue 5**     Whether the District Court's findings and conclusions in the Order Appointing Receiver are supported by any legally sufficient evidence. As framed by Appellant.

**Issue 6**     Whether the District Court's Order Appointing Receiver, which requires Fran, who is neither a Trustee nor signatory on the Trust's bank accounts, to pay all expenses incurred by the Trust in the ordinary course of business results in an unconstitutional taking of Fran's personal property. As framed by Appellant.

**Issue 7**     Whether the District Court abused its discretion by issuing its Order Appointing Receiver, which enjoined Fran from exercising her statutory right to challenge the rulings of the District Court and the actions of the receiver. As framed by Appellant.

**STATEMENT OF FACTS**

**1.    Family Background**

Dorothy Spanos ("Dorothy") and Nick Spanos ("Nick") were married for 56-years. They had two children, Appellee, Katherine Leuschner ("Kathy"), and Appellant, Frances Shelton ("Fran").[3] In 1994, Nick created the "Nick Trust" and conveyed virtually all of his and Dorothy's assets into the Nick Trust, including the approximately 270-acre ranch located in Crawford, Texas (the "Spanos Ranch") that is at the center of the underlying litigation.[4] Nick died on July 19, 2013. In 2014, Dorothy caused the corporate trustee of the Nick Trust to resign, and Fran agreed to serve as the co-Trustee of the Nick Trust. At the same time, Dorothy, acting individually and as co-Trustee of the Nick Trust and Fran as co-Trustee executed a Partition Agreement between the Nick Trust and Dorothy (the "Partition Agreement") that, in part, conveyed the approximately 270-acre Spanos Ranch to Dorothy.[5]

    a.    *Dorothy Trust*

In December 2017, Dorothy created the Dorothy Spanos Living Trust (the "Trust") and simultaneously conveyed the Spanos Ranch to her Trust. In July 2020, Dorothy executed an amendment to the Dorothy Trust

---

[3] CR.469.
[4] CR.469.
[5] CR.445–51.

1

(the "Trust Amendment") that further detailed her wishes relating to the Spanos Ranch. Dorthy served as the initial Trustee of the Trust.[6]

The beneficiaries of the Trust are: Kathy (Appellee), Fran (Appellant), Robert Lee Spanos ("Bobby") (Appellee), Christpher Blake Spanos ("Chris") (Appellee), Kathryn Nicole Lawrie ("Nicole") (Appellee), Nicholas Shelton ("Nicholas"), Brandon Shelton ("Brandon"), and Brianna Hunstinger ("Brianna").[7] Fran's husband, Rick Shelton ("Rick"), is named as a contingent beneficiary in the event Fran predeceased him.[8]

On September 18, 2021, Dorothy died, leaving Fran as the successor Trustee.

2. **Spanos Ranch and the Front 45**

a. *Trust Distributions*

As amended, Section 7 of the Trust provided, among other things, a plan for distributing the Spanos Ranch to the beneficiaries of the Trust as follows:

| | | |
|---|---|---|
| a. | Fran Shelton | 60-acres, including barn, stables, and adjoining land; |
| b. | Kathy Leuschner | 60-acres including the Rock House and adjoining land; |
| c. | Bobby Spanos | 44-acres and use of the address 228 Spanos Ranch Road. |
| d. | Chris Spanos | 12-acres; |
| e. | Nicole Lawrie | 12-acres; |
| f. | Nicholas Shelton | 12-acres; |
| g. | Brandon Shelton | 12-acres; and |

---

[6] CR.460-551 (Trust), CR.553-560 (Trust Amendment).
[7] CR.492.
[8] CR.553.

2

h.      Brianna Hunstinger        12-acres.

As the Court can imagine, road access to all of these tracts is an issue, which ought to be easily solved by using the only, but well-established access road into the Spanos Ranch. Use of that road has become a focal point of the disputes around the Front 45.

b.      *Front 45 Acres to be sold*

The amended Section 7.11 of the Trust *required* that "the existing house; RV Shed; Hanger; and 39.22 acres including runway, front pasture, and pasture behind the home to be sold" "as soon as practicable" following Dorthy's death (2021) with the proceeds to be split evenly as follows: (1) one-third to Fran, (2) one-third to Kathy, and (3) one-third to be evenly divided amongst all of Dorothy's living grandchildren.[9] The Parties have generally referred to this tract as the "Front 45." The Front 45 fronts on Cedar Rock Parkway west of Crawford, Texas.[10]

Despite the fact that Dorthy died on September 18, 2021, little progress has been made toward dividing the Spanos Ranch or selling the Front 45.[11] The lack of progress is due to Fran's refusal to adhere to the terms of the Trust (when she served as Trustee) and obstruction of the efforts of Mr. Malone and Judge Stem, including filing a baseless lawsuit against Mr. Malone once he had announced a plan to

---

[9] *See* CR.555–56.
[10] CR.566.
[11] *See* 2.RR. 101:4 -102:15.

proceed to sell the Front 45 (three years after Dorthy's death and countless discussions and attempts to resolve the disputes).[12]

3.      **Trust Administration History Concerning the Front 45**

   a.      *Fran's Improper Attempt to Benefit Own Family*

Despite Dorothy's express direction that the Front 45 was to be sold, Fran's original proposal for distributing the Spanos Ranch ("Fran's Proposal") called for her son, Nicholas, to receive 12-acres in the right corner of the front pasture of the Front 45, which would have had a negative effect on pricing and marketability of the remainder of the Front 45, and was actually contrary to the express/provisions of the Trust.[13] Fran, despite serving as Trustee and in violation of her fiduciary duties, also selected *for herself* the only (and long used) road for ingress and egress from the Spanos Ranch.[14] This exercise of self-dealing also ignored the fact that the Trust Amendment required that Bobby Spanos receive the address for the Spanos Ranch—228 Spanos Ranch Road—and therefore, arguably the road tied to that address.[15]

Because Kathy believed that Fran's Proposal was neither practical nor proper under the terms of the Trust Amendment, and because she was also concerned with Fran's handling (or lack thereof) of Dorothy's probate estate and Trust, she applied

---

[12] *See* CR.9–19.
[13] 3.RR.ExhibitI-3, the map of Fran's Proposal is attached hereto as Tab 1.
[14] *Id.*
[15] CR.555–556; 2.RR.125:2–12.

4

for the appointment of a Temporary Administrator of Dorothy's Estate and Trust Advisor to interpret the Trust Amendment, as expressly allowed under Section 4.02 of the Trust.[16] On March 8, 2022, the County Court at Law appointed Judge Robert Stem, a Senior District Judge with 34-years of experience on the bench, as the Trust Advisor of the Trust, and he has served in that capacity *by agreement* since May 18, 2022.[17]

b. *Judge Stem Immediately Encounters Controversy*

Shortly after his appointment, Judge Stem held meetings with the attorneys for Kathy and Fran and quickly learned that there had already been a family falling-out and controversies. For instance, Fran had accused Bobby and Chris of stealing Trust property, including Dorothy's wedding ring and several firearms.[18] Although he asked Fran for evidence to support her accusations, Judge Stem testified that not only did Fran never produce any evidence, but the firearms were discovered in the house on the Spanos Ranch that was under Fran's control.[19] It was later discovered that the wedding ring was actually in Fran's possession.[20]

---

[16] CR.475–80.
[17] CR.1084–86 (Order Appointing Judge Stem as Trust Advisor), CR.1092–93 (First Agreed Order Extending Judge Stem's Appointment), CR.1095 (Rule 11 Agreement Extending Judge Stem's Appointment).
[18] CR.705–06.
[19] 2.RR.79:25–81:13.
[20] *See* CR.705–06.

c.    *Judge Stem Overrules Fran's Front 45 Effort to Benefit Her Child*

When it came time to discuss the sale of the Front 45 and distribution of the Spanos Ranch, Judge Stem was presented with a map of Fran's Proposal.[21] Judge Stem testified that he found Fran's Proposal "inconsistent" with the "clear . . . unambiguous" terms of the Trust to sell the Front 45, and that "put[ing] one of her children up front" was a "clear violation of the Trust."[22]

Consequently, on October 20, 2022, Judge Stem (properly) overruled Fran's Proposal to improperly benefit her child by stating:

> There is no language in the Amended Trust that can justify sectioning out any acreage in the front pasture . . . . . all of that property is intended to be sold.[23]

Judge Stem issued a revised, proposed plan for distributing the property to the beneficiaries ("Judge Stem's Proposal").[24] To effectuate Judge Stem's Proposal, Bobby voluntarily relinquished three (3) acres, and a small portion of Kathy's tract and Fran's tract were also reduced.[25]

d.    *Fran Refuses Access Easements*

On December 21, 2022, Judge Stem circulated a preliminary survey that incorporated Judge Stem's Proposal.[26] Because there is only a single, long used road

---

[21] 3.RR.ExhibitI-3, Tab 1.
[22] 2.RR.88:4–22; 89:4–12; 103:15–21.
[23] 3.RR.ExhibitI-2, Judge Stem's letter dated October 20, 2022 is attached hereto as Tab 2 (*see also* CR.562–64).
[24] *Id.*; CR.564.
[25] *See* CR.564; 2.RR.151:21–152:12.
[26] 3.RR.ExhibitI-2, Tab 2 (*see also* CR.562–64).

6

for ingress and egress to the Spanos Ranch, access easements for the remainder of the tracts throughout the Spanos Ranch were necessary for all beneficiaries (except Fran) so they could access their respective landlocked tracts.[27] To accommodate this obvious need, the Trust *expressly authorizes* the grant of easements, which Judge Stem testified were "essential" for the landlocked tracts.[28]

Yet Fran, who was then still serving as the Trustee, *refused* to entertain granting access easements on or across the existing entry road she had (improperly) selected solely for her own use and that of her son, Nicholas, and her stepchildren, Brandon and Brianna.[29] Understandably, this was a position that Judge Stem found "inappropriate" for a Trustee.[30] This act of favoritism and self-dealing by Fran left Kathy, Bobby, Chris, and Nicole no choice but to request that Judge Stem remove Fran as Trustee of the Trust because she was ignoring her fiduciary duty to act in the best interest of *all* beneficiaries, and certainly was not acting in good faith.[31]

e.    *Judge Stem Removes Fran*

On May 3, 2023, Judge Stem, pursuant to Section 4.07(c) of the Trust and citing the need for a "**truly neutral, detached, and independent trustee**," removed Fran as Trustee and appointed Mr. Malone, a neutral third party with substantial real

---

[27] 2.RR.87:12–17.

[28] 2.RR.87:4–17; CR 429.

[29] 2.RR.90:9–91:3; CR 390–91.

[30] *Id.*

[31] 3.RR.ExhibitI-4, Judge Stem's May 3, 2023 letter is attached hereto as Tab 4 (*see also* CR.568).

estate experience, as her successor.[32] Judge Stem later testified that he believed he had reason to remove Fran for cause because of the "multitude" of breaches, but that he did not feel that it was either necessary nor diplomatic to expressly tell Fran that she was being removed for cause because she was incapable of being "a neutral, detached, and independent trustee."[33]

### f. *Undue Delay Because Fran Insists on Undue Benefit*

Nonetheless, now nearly four years following Dorothy's death, the Spanos Ranch remains in the Trust, and the Front 45 remains unsold simply because Fran refuses to accept the well-established and common sense principle under Texas law that landlocked tracts—which all tracts on the Spanos Ranch except Fran's will be— are entitled to an easement by necessity and that the Trust gives the Trustee the power to grant easements on or over any real property owned by the Trust.[34] Instead, Fran's solution was to offer to purchase the Front 45 and force Kathy, Bobby, Chris, and Nicole to build a separate road on the Spanos Ranch while she would own and control the only (long) established road.[35]

Despite numerous meetings with all sides, and attempts to resolve these issues, as well as related real estate matters, Judge Stem and Mr. Malone finally

---

[32] *Id.*
[33] 2.RR.92:5–93:3; 108:12–23.
[34] *Koonce v. Brite Estate*, 663 S.W.2d 451, 452 (Tex. 1984).
[35] 2.RR.128:21–129:21.

announced a plan to sell the Front 45 acres with appropriate access easements.[36]

Soon after Mr. Malone announced his intentions, Fran's counsel penned a lengthy letter to Mr. Malone in which he not only expressed frustration at Mr. Malone, but also demanded (1) that Fran be given a release before any property was conveyed out of the Trust, and (2) he was concerned that the Trust lacked sufficient funds if litigation was brought against Fran.[37]

### 4. Fran Sues Mr. Malone in District Court, and Mr. Malone Resigns

In November 2024, Fran sued Mr. Malone in District Court for a supposed breach of fiduciary duty and obtained an *ex parte* restraining order (not from Judge Luna) to prevent the very things that Mr. Malone was authorized and required to do by the Trust—sell the Front 45 and grant easements.[38] Fran filed that suit only two months after her attorney had expressed concerns about the lack of Trust funds available to defend litigation.[39]

Judge Stem testified that the suit was "clearly baseless" because the very things prohibited by the TRO were expressly required/allowed by the Trust, and that neither Fran nor her husband Rick would be proper trustees that could be entrusted to make critical decisions on easements, deed restrictions, and dividing up the

---

[36] 2.RR.127:16–128:7.

[37] CR.113–17. Amazingly, this claimed lack of funds by Fran's lawyer did not mention the fact that Fran had not turned over, disclosed, or made Mr. Malone aware of $650,000 in Trust funds despite Judge Stem's instructions.

[38] 3.RR.ExhibitI-5, the *Ex Parte* Temporary Restraining Order is attached hereto as Tab 5.

[39] *See* CR.113–117.

Spanos Ranch.[40]

Ultimately, Mr. Malone resigned as Trustee.[41] Currently, the Trust remains without a trustee.

## 5. Judge Luna Appoints a Receiver to Carry Out the Long Overdue Sale of the Front 45

After Mr. Malone's resignation, Appellees filed their Motion to Appoint Receiver.[42] At the hearing, Judge Stem testified at length as to why a Receivership was necessary, explaining to Judge Luna that this was an "extraordinary case."[43] "And it requires extraordinary measures" otherwise the "grandkids will be cheated out of their inheritance."[44] He went so far as to say that a Receivership was the "only route" to wrap up the Trust, and that "this is a time where we need to save these people from themselves. . . Everyone deserves this to be final."[45]

In fact, the long delay (despite the Trust requirements) deprives the beneficiaries of their gifts from Dorothy. Judge Stem's testimony, and the apparent circumstances—including continued litigation from Fran—make clear that Court

---

[40] 2.RR.93:16–20; 96:21–99:9. As an "Interested Trustee" they would have no authority under the Trust. CR.538–39.
[41] CR.990.
[42] CR.956–1019.
[43] 2.RR.101:10–102:15.
[44] *Id.*
[45] *Id.*

supervision and an immune Receiver remain the only clear efficient path to resolution.

Appointment of a Receiver was the only viable way the Front 45 could be sold.[46] Appointing another Trustee to carry out the sale was futile, because Fran demonstrated that she would simply sue the Trustee for attempting to follow the provisions of the Trust if she did not get her way.[47]

Judge Stem testified that it would be "virtually impossible" to find a qualified person to serve as Trustee with pending litigation arising out of a suit against Mr. Malone for breach of fiduciary duty for attempting to carry out the express terms of the Trust.[48] Accordingly, the only way to sell the Front 45 (as required by the Trust) was to appoint a Receiver to carry out the sale with the protection of judicial immunity—a facet of a Receivership that Judge Stem deemed "critical" to stop the "never ending merry-go-round."[49] Ironically, Fran herself recognizes the need for immunity since she herself (improperly) demanded a release from Mr. Malone and

---

[46] *Id.*
[47] *Id.*; 2.RR.130:12–131:11.
[48] 2.RR.96:21–99:18.
[49] 2.RR.130:12–131:11.

the other beneficiaries before personal property, let alone the Spanos Ranch, was distributed out of the Trust.[50]

6.      **Undecided Motion to Re-Affirm**

Fran filed a Motion to Re-Affirm her position as Trustee, or to designate her husband Rick as Trustee—despite her own attorney pointing out on the record that the express terms of the Trust *disqualify* Fran from serving as Trustee because she is an Interested Trustee in relation to the Spanos Ranch—a fact Fran conveniently overlooked when she was Trustee.[51]

The Motion to Re-Affirm also collaterally attacks the subject matter jurisdiction of the County Court at Law. This marks the first time in over three years of trust administration and litigation that Fran challenged the subject matter jurisdiction of the County Court at Law. It is a rather remarkable challenge given that she agreed to nearly all of the County Court at Law's orders. Through the Motion to Re-Affirm, Fran seeks to declare void all acts taken by Judge Stem as Trust Advisor and undo more than three years of trust administration.

The record is clear that *Judge Luna did not rule on that Motion to Re-Affirm.* Although Fran makes arguments about it throughout her brief, these efforts are beyond the Court's limited review in this interlocutory appeal and are nothing more

---

[50] CR.113–117.
[51] 2.RR.103:8–104:5.

12

than Fran's attempt to improperly gain appellate review of an undecided matter.

## 7. Receivership Hearing

At the hearing on the Receivership, Appellees presented evidence of Fran's various breaches (and threatened breaches) of trust and self-dealing, and evidence that appointment of a Receiver was the only way a sale of the Front 45 could be carried out. Testifying as a fact witness, Judge Stem recounted Fran's misconduct, including how Fran's Proposal improperly favored her child, Nicholas, in the division of the Spanos Ranch and was not in accordance with the terms of the Trust and how she refused to grant easements other than to her children ignoring the obvious needs of the other beneficiaries.[52] Judge Stem also testified how he had grounds to remove Fran for cause when he removed her on May 3, 2022.[53]

In addition to Judge Stem's testimony, Appellees introduced numerous exhibits supporting appointment of the Receiver, including (1) a map of Fran's Proposal,[54] (2) Judge Stem's letter dated October 20, 2022 rejecting Fran's Proposal,[55] (3) Judge Stem's proposal for diving the Spanos Ranch,[56] (4) Judge Stem's May 3, 2022 letter removing Fran as Trustee and appointing Mr. Malone,[57] and (5) the *ex parte* Temporary Restraining Order Fran obtained on

---

[52] 2.RR.87:4–89:12; 90:9–91:6; 92:5–93:3; 103:15–21; 108:18–20.
[53] 2.RR.108:18–20.
[54] 3.RR.ExhibitI-3, Tab 1.
[55] 3.RR.ExhibitI-2, Tab 2 (*see also* CR.562–64).
[56] CR.566, Judge Stem's Proposal is attached hereto as Tab 3.
[57] 3.RR.ExhibitI-4, Tab 4 (*see also* CR.568).

13

November 8, 2024, that prohibited Mr. Malone from selling the Front 45, as required, and granting access easements to landlocked beneficiaries, as permitted under the Trust and required under Texas law.[58]

Judge Luna took the decision under advisement and ultimately granted the Motion to Appoint Receiver, appointing Aubrey Williams as Receiver ("Order").[59] Despite Fran's claim, Judge Luna's Order does *not* refer to any prior orders, nor does it enforce any of Judge Stem's prior acts taken as Trust Advisor.[60] Instead, the Order directs Mr. Williams to carry out the sale of the Front 45 in accordance with the Trust's provisions. Judge Luna has not yet ruled on the Motion to Re-Affirm.

## SUMMARY OF THE ARGUMENT

Despite Appellant's briefing, this is actually a simple, straightforward appeal. Only one issue is properly before the Court—whether Judge Luna's Order appointing Aubrey Williams as Receiver to facilitate the sale of the Front 45 was an *abuse of discretion* (it was not). It is the only issue this Court has jurisdiction to hear on interlocutory appeal. Moreover, it is the specific Order that is the basis of Appellant's Notice of Appeal.[61]

---

[58] 3.RR.ExhibitI-5, Tab 5; *Koonce*, 663 S.W.2d at 452.
[59] CR.1291–99.
[60] Appellees believe these specious arguments about "silent" incorporation of prior orders of another Court are made solely to allow argument about the collateral attack in the Motion to Re-Affirm—despite not having a ruling on that motion to appeal.
[61] CR.1300–01.

As to that issue, Texas law and the record clearly support Judge Luna's Order. Section 114.008(a)(5) of the Texas Property Code provides that a District Court may appoint a Receiver to take possession of trust property to remedy a breach of trust that may occur or has occurred. The record provides legally sufficient evidence of breaches of trust (both in the past and potentially in the future) by Appellant.

Further, Texas Civil Practice & Remedies Code ("CPRC" throughout) § 64.001(a)(6) provides that a District Court may appoint a Receiver under the rules of equity. Helping resolve ongoing litigation concerning the management of trust property warrants an appointment of a receiver under the rules of equity.[62] Here, the rules of equity warranted appointment of a Receiver because, as Judge Stem testified, with the active obstruction, including lawsuits against the Trustee, only a Receiver with derived judicial immunity could carry out a sale of the Front 45 as required by the Trust, "as soon as practicable" after Dorothy's death.[63] More than three years had passed since Dorothy's death—it was time to accomplish that required act. Nothing more is needed to affirm Judge Luna's Order.

Given that this is the only issue that is properly before the Court, it is surprising that Appellant waits until page 27 of her brief to address whether Judge Luna's order is supported by evidence. Yet, in looking at Appellant's briefing,

---

[62] *In re Estate of Trevino*, 195 S.W.3d 223, 231 (Tex. App.—San Antonio 2006, no pet.).
[63] 2.RR.130:12–131:11; CR.488.

15

it becomes clear that what Appellant *truly* wants is to set aside more than three years of trust administration and become Trustee of the Trust again. Appellant apparently believes that if she can undo Judge Stem's actions as Trust Advisor, she can resume her role as Trustee to make the improper choices she sought to make before, in order to benefit her own family and ignore Trust provisions—despite her own attorneys seemingly recognizing that an Interested Trustee, such as Fran, is barred under the Trust from making certain decisions.[64]

These issues, however, are beyond the Court's limited review in this interlocutory appeal. There is nothing that the County Court at Law has done for the Court to review. Simply put, the Court does not have jurisdiction over that issue because the District Court has not yet ruled on the Motion to Re-Affirm. Moreover, denial of a motion to appoint a trustee is not an issue that can even be raised on interlocutory appeal.[65]

To avoid this result, Appellant argues (without any cited basis) that Judge Luna's Order "*silently incorporates*"[66] and enforces prior orders from the County Court at Law that Appellant claims were issued without subject matter jurisdiction.

---

[64] CR.545; 2.RR.103:22–104:5.
[65] *See* CPRC § 51.014.
[66] Unsurprisingly—Judge Luna's Receivership Order is reviewed under the "abuse of discretion" standard—and there are no cases cited (nor evidence) to support this specious claim of "silent incorporation."

The plain language of Judge Luna's Order, however, tells a different story. Judge Luna's Order makes no mention of prior orders. Nor can Appellant point to a single County Court at Law order that mirrors Judge Luna's Order. Instead, Judge Luna issued the Order after conducting an evidentiary hearing. No matter how one looks at Judge Luna's Order, it is clear that his Order is an independent Order, and it must be *presumed* to be proper (which it is).

If the Court entertains Appellant's collateral attack substantively, Appellant's arguments still fail as a matter of law. Because the County Court at Law's orders state that they were issued with jurisdiction, the orders are, at best, voidable.[67] *They are not void.* **The cases are clear that orders that are voidable cannot be collaterally attacked, and Appellant never sought the required direct review**.[68]

Therefore, Appellant must make any jurisdictional challenges to the County Court at Law's orders either in County Court at Law, or on direct appeal. She has

[67] *See e.g. Solomon, Lambert, Roth & Associates, Inc. v. Kidd*, 904 S.W.2d 896, 901 (Tex. App.—Houston [1st Dist.] 1995, no writ) ("It is well established that a recital in a judgment that recites the court's jurisdiction imports absolute verity to that judgment and can only be attacked directly *(citing Akers v. Simpson*, 445 S.W.2d 957, 959 (Tex. 1969)); *Parsons v. Parsons*, 648 S.W.3d 354, 357 (Tex. App.—Texarkana 2021, pet. denied).

[68] *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 863 (Tex. 2010) ("a voidable order must be corrected by direct attack") *Parsons*, 648 S.W.3d at 357; *In Interest of M.L.G.J.*, No. 14-14-00800-CV, 2015 WL 1402652, at *3 (Tex. App.—Houston [14th Dist.] Mar. 24, 2015, no pet.) ("Errors that make a judgment voidable are subject to waiver and must be preserved pursuant to Texas Rule of Appellate Procedure 33.1.")

done neither, despite the fact that the County Court at Law case is *still pending* (because Dorothy's Estate is not closed).[69]

Finally, if the Court analyzes whether the County Court at Law had jurisdiction to issue its orders, the Court will find that jurisdiction exists. The County Court at Law had original probate jurisdiction and ancillary jurisdiction over the Trust to issue its orders. Indeed, Appellant *agreed* to *two* Orders extending Judge Stem's term as Trust Advisor and never objected to his appointment—until now.

For each of these reasons, the Court should affirm Judge Luna's Order.

## ARGUMENT[70]

**Issue 1**   **Was the District Court's appointment of a Receiver an abuse of discretion when the District Court heard evidence of Appellant's breaches of trust and evidence that the only way to carry out the Trust's terms and protect the Trust's assets was to appoint a Receiver, and additionally considered the record? In Response to Appellant's Issue No. 1.**

**Issue 5**   **Whether the District Court's findings and conclusions in the Order Appointing Receiver are supported by any legally sufficient evidence. As framed by Appellant.**

---

[69] Appellees believe there is at least one asset that will have to be dealt with through probate.

[70] Because this Appeal deals only with the Receivership Order—the Issues are presented in logical order relative to the Receivership Order being appealed. The extraneous issues raised are addressed later in this Brief.

**1.      Judge Luna did not abuse his discretion in appointing a Receiver**.[71]

The only issue that this Court has jurisdiction over is whether the District Court abused its discretion in appointing a Receiver. Although Appellant spends 27 pages arguing other issues beyond the purview of this interlocutory appeal, the fact of the matter is, this is the only true issue of this appeal. As to this issue, the law clearly establishes Judge Luna's decision to appoint a Receiver was proper.

*A.      Standard of review for appointment of receiver.*

The appointment of a Receiver lies within the sound discretion of the trial court, and appellate courts review the appointment under an abuse of discretion standard.[72] A court may abuse its discretion by ruling "arbitrarily, unreasonably, ... without regard to guiding legal principles, or ... without supporting evidence."[73] Crucially, as to ruling "without supporting evidence," the trial court generally does not abuse its discretion when its decision is based on conflicting evidence and some evidence in the record reasonably supports the trial court's decision.[74] Thus, "[a] trial court does not abuse its discretion if there is some evidence of a substantive and

---

[71] This section responds to Issues 1 and 4 in Appellant's Brief.
[72] *In re Estate of Herring*, 983 S.W.2d 61, 65 (Tex. App.—Corpus Christi–Edinburg 1998, no pet.); *see Spiritas v. Davidoff*, 459 S.W.3d 224, 231 (Tex. App.—Dallas 2015, no pet.).
[73] *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998) (emphasis added) (internal quotations omitted).
[74] *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002).

probative character to support the court's decision."[75] Further, the Court "defer[s] to the trial court's judgment in matters involving factual resolutions and any credibility determinations that may have affected those resolutions."[76]

Under the abuse of discretion standard, legal and factual insufficiency are not independent reversible grounds, but are relevant components in assessing whether the trial court erred.[77] Here, the complaint is one of legal insufficiency which requires the lack of *any* evidence. In determining whether an abuse of discretion has occurred because the evidence is legally or factually insufficient to support the trial court's decision, an appellate court must ask: (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in the application of its discretion.[78]

Here, the District Court did not abuse its discretion in appointing a Receiver over the sale of the Front 45 in the Trust. And it surely cannot be said that Judge Stem's involvement and viewpoint provided at the hearing was not substantial and probative.

---

[75] *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.) (*citing Valdez v. Valdez*, 930 S.W.2d 725, 731 (Tex. App.—Houston [1st Dist.] 1996, no writ).

[76] *Id.* at 823–24.

[77] *Coburn*, 433 S.W.3d at 823; *see also In the Interest of D.C.*, No. 13–15–00486–CV, 2016 WL 3962713 at *6 (Tex. App.—Corpus Christi–Edinburg July 21, 2016, no. pet. h.) (mem. op.).

[78] *Gonzalez v. Villarreal*, 251 S.W.3d 763, 774 n. 16 (Tex. App.—Corpus Christi 2008, pet. dism'd); *In re TDC*, 91 S.W.3d 865, 872 (Tex. App.—Fort Worth 2002, pet. denied).

B.    *Judge Luna had discretion to appoint a Receiver under the Texas Property Code.*

The Texas Property Code provides that where a breach of trust **has occurred or might** occur, the trial court may order a trustee to account or appoint a Receiver to take possession of the trust property and administer the trust.[79] Here, there is ample evidence establishing that Appellant committed or threatened numerous breaches of trust. This includes, but is not limited to, her: (1) unfounded accusations of theft against Bobby and Chris,[80] (2) improper use and wasting of trust funds,[81] (3) self-dealing and failure to make impartial decisions,[82] (4) abject refusal to adhere to the terms of the Trust—as evidenced by Fran's Proposal,[83] (5) removal of her as Trustee due to her inability to be a "neutral, detached and independent trustee,"[84] and (6) baseless opposition to Mr. Malone's attempt to sell the Front 45 and to grant appropriate easements, including use of the long used, existing road, to land-locked beneficiaries.[85]  The Motion to Re-Affirm itself is evidence that Fran intends to contravene the Interested Trustee provision in the Trust in order to reach the result

---

[79] Tex. Prop. Code § 114.008(a)(4)–(5) (emph. added); *Estate of Hoskins*, 501 S.W.3d 295, 306 (Tex. App.—Corpus Christi–Edinburg 2016, no pet.).
[80] CR.705–06.
[81] CR.806.
[82] 2.RR.90:9–91:3; CR 390–91.
[83] *Id.*; 3.RR.ExhibitI-3, Tab 1.
[84] 2.RR.90:9–91:3; CR 390–91; CR.568.
[85] CR.9–23; 2.RR.90:9–91:3; CR 390–91.

21

she desires, which does not align with the Trust and would be a future breach of trust.[86]

Indeed, Appellant was removed from her role as Trustee (in part) due to her breach of trust, of which Judge Stem testified there were a "multitude."[87] Appellant, in turn, sued her successor, Mr. Malone, for supposed breaches of trust because he finally tried to follow the provisions of the Trust and sell the Front 45.

Additionally, Appellant's counsel at the hearing on the Motion to Appoint Receiver *revealed for the first time* that Fran *withheld* key information from Mr. Malone about $650,000 of trust funds that were never actually turned over, or fully disclosed, to him, or put in his possession.[88] Judge Stem testified that he had ordered Fran to turn over documents to Mr. Malone to assist with the transition and that Fran's failure to communicate clearly that there was $650,000 that Mr. Malone had not assumed authority over was "not good faith" on Fran's part.[89] Appellant only revealed the existence of these substantial funds when it was in was in her self-interest to support her opposition to appointment of a Receiver. And this is in spite of her own counsel (who also secretly recorded Mr. Malone and Judge Stem) expressing to Mr. Malone his concern about the *lack* of Trust funds (without mention

---

[86] Importantly, a Receiver is also an appropriate remedy when a breach of trust *might* occur. Tex. Prop. Code § 114.008(a)(5); *Estate of Hoskins*, 501 S.W.3d at 306.
[87] 2.RR.90:9–91:3; 108:15–23; 3.RR.ExhibitI-4; CR 390–91; CR.568.
[88] 2.RR.131:13–22; 134:20–24.
[89] 2.RR.134:14–24; CR.568.

of the $650,000 Fran had not disclosed) to defend a lawsuit two months before Fran initiated this litigation.[90]

### C. Judge Luna also had discretion to appoint a Receiver under the rules of equity.

CPRC § 64.001(a)(6) provides that a court of competent jurisdiction may appoint a Receiver in any case in which a Receiver may be appointed under the rules of equity.[91] Appointment of a receiver under the rules of equity is warranted to resolve years long litigation and dispute over the management of probate property.[92] This case is akin to *In re Estate of Trevino*. In that case, the Court held that the trial court did not abuse its discretion because:

> the probate court could have determined that the appointment of the receiver would resolve two years of ongoing litigation and problems confronting the parties in regard to the management of the business of the bar. The ongoing litigation and nature of those problems are supported by the record.[93]

Further, the court held that appointment of a Receiver under the rules of equity: (1) does not require a showing that no other adequate remedy existed, and (2) does

---

[90] CR.113–117.

[91] Appellees were not required to prove the Trust is insolvent before the District Court could appoint a Receiver under § 64.001(a)(6). The case Appellant cites, *Hawkins v. Twin Montana, Inc.*, 810 S.W.2d 441, 444 (Tex. App.—Fort Worth 1991, no writ), interpreted a prior version of Section 64 and is inapplicable here.

[92] *In re Estate of Trevino*, 195 S.W.3d at 231.

[93] *Id.* at 231–32. *See also In re Estate of Herring*, 983 S.W.2d at 65 ("the appointment of a receiver will solve most, if not all of the vexations and problems confronting the parties on the issue of partition, as well as management of properties") (quoting *Gonzalez v. Gonzalez*, 469 S.W.2d 624, 632 (Tex. App.—Corpus Christi 1971, writ ref'd n.r.e.)).

not need a showing that the property to be placed under the control of the Receiver was in danger of being lost, removed, or materially injured.[94]

Here, the evidence before the District Court clearly established that the rules of equity supported appointment of a Receiver because a Receiver was the only mechanism available to ensure the Front 45 is sold in an efficient and proper manner in accordance with the Trust's provisions. Appointing a new trustee to carry out the sale would be futile—and would only result in Appellant filing yet another lawsuit against the new trustee.[95]

Indeed, Appellant's brief *already* threatens *more* lawsuits if this Court does not reverse the District Court.[96]

> In this case, however, the appointment of the receiver is based largely on the testimony of Judge Stem, who was improperly appointed trust advisor. This fact, coupled with his continued administration of the Trust and the court-ordered sale of the Trust property, ***will likely multiply future legal proceedings deemed necessary to prevent or remedy the illegal sale of the trust property, not deter them***. Why? Because the district court's Order Appointing Receiver enforces the prior void orders of the county court at law by rubber-stamping the appointment of Judge Stem as trust advisor.

Appellant's endless threats of litigation until she gets her way threatens depletion of trust assets, deprives beneficiaries of the ability to receive their gifts from the Trust (now, nearly four (4) years after the death of Dorthy Spanos) and

---

[94] *In re Estate of Trevino*, 195 S.W.3d at 231.
[95] 2.RR.99:10–100:1; 130:12–131:11.
[96] Appellant's Brief at 41 ("emphasis added").

underscores exactly why a Receiver is necessary. A Receiver has derived judicial immunity when taking actions in the course and scope of his duties, and thus will be protected from Appellant's threat of future litigation.[97] Even Appellant recognizes the benefit of immunity given her repeated demands for a release throughout the trust administration.[98] It is apparent that only with the protection of derived judicial immunity can the Trust's terms finally be carried out as intended.

Each of these pieces of evidence establish that the District Court did not abuse its discretion in appointing a Receiver.[99] Appellant's arguments regarding supposedly conflicting evidence only underscores that the trial court properly exercised its discretion. Indeed, as set forth above, resolving credibility determinations and reviewing conflicting evidence is uniquely within the province of the factfinder and cannot be an abuse of discretion.[100]

**Issue 6** **Whether the District Court's Order Appointing Receiver, which requires Fran, who is neither a Trustee nor signatory on the Trust's**

---

[97] *See 1st & Trinity Super Majority, LLC v. Milligan*, 657 S.W.3d 349, 366 (Tex. App.—El Paso 2022, no pet.) ("the policy underlying derived judicial immunity 'guarantee[s] an independent, disinterested decision-making process' and 'prevent[s] the harassment and intimidation that might otherwise result if disgruntled litigants could vent their anger by suing…'" (*quoting Alpert v. Gerstner*, 232 S.W.3d 117, 125–26 (Tex. App.—Houston [1st Dist.] 2006, pet. denied)).

[98] CR.113–117.

[99] *See Estate of Benson*, No. 04-15-00087-CV, 2015 WL 5258702, at *5 (Tex. App.—San Antonio Sept. 9, 2015, pet. dism'd). *See also e.g.; Elliott v. Weatherman*, 396 S.W.3d 224, 228 (Tex. App.—Austin 2013, no pet.); *Estate of Price*, 528 S.W.3d 591, 595 (Tex. App.—Texarkana 2017, no pet.); *Moody Nat'l Bank v. Moody*, No. 14-21-00096-CV, 2022 WL 14205534, at *8 (Tex. App.—Houston [14th Dist.] Oct. 25, 2022, pet. denied).

[100] *E.g., Low v. State*, No. 2-03-347-CV, 2005 WL 1120013, at *1 (Tex. App.—Fort Worth May 12, 2005, no pet.) ("An abuse of discretion does not occur where the trial court bases its decisions on conflicting evidence. Furthermore, an abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court's decision.").

25

**bank accounts, to pay all expenses incurred by the Trust in the ordinary course of business results in an unconstitutional taking of Fran's personal property. As framed by Appellant.**

**Issue 7**    **Whether the District Court abused its discretion by issuing its Order Appointing Receiver, which enjoined Fran from exercising her statutory right to challenge the rulings of the District Court and the actions of the receiver. As framed by Appellant.**

**2.    Judge Luna's Order is neither overbroad nor does it restrict Appellant's rights.[101]**

> *A.    The Order does not restrict Appellant's ability to enforce her legal rights.*

Appellant argues that the District Court's Order is overbroad for two reasons. First, Appellant claims the Order restricts her ability to enforce her legal rights because the Order states beneficiaries "are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would . . . [h]inder, obstruct or otherwise interfere with the Receiver in the performance of his duties." According to Appellant, this language supposedly precludes her "from filing her notice of interlocutory appeal and filing this brief, or taking any other legal action, even though she has legal and statutory rights to do so."[102]

This argument once again signals Appellant's desire to continually litigate and obstruct to get her way, and to prevent the sale of the Front 45 or the granting of any

---

[101] This Section addresses Issues 5 and 6 from Appellant's Brief.
[102] *See* Appellant's Brief at 44.

easements. This, of course, emphasizes the need for a Receiver. Further, Appellees

do not challenge Appellant's ability to file this interlocutory appeal. In fact, Fran

admits the Order is *not* an anti-suit injunction, and does not preclude the filing of

any litigation.[103] At most, it blankets the "Receiver and his Retained Personnel" with

judicial immunity, and properly so.[104] Plainly, no language in the Order states that

Appellant may not assert her legal rights.[105] The language Appellant complains of

clearly is meant to prohibit Appellant from taking actions to obstruct the sale of the

Front 45, such as denying the Receiver access to the Front 45. If the Court, however,

finds that the language is overbroad, Appellees request that the Court only modify

the language in the Order that it finds is overbroad.[106]

### B. The Order is not an unconstitutional taking of Fran's property.[107]

Second, Appellant argues the Order is an unconstitutional taking of her

property because it requires her to pay the expenses of the Trust incurred in the

---

[103] Appellant concedes the Order is not an anti-suit injunction. Appellant's Brief at 44 ("the court's order is not technically an anti-suit injunction").

[104] "Those clothed with authority to perform judicially appointed or delegated duties, including court-appointed receivers, are entitled to derived judicial immunity if they actually function as an arm of the court." *Clarke as Next Friend of B.D.C. v. Wolf*, No. 14-24-00226-CV, 2025 WL 1688422, at *3 (Tex. App.—Houston [14th Dist.] June 17, 2025, no pet. h.) (*citing Delcourt v. Silverman*, 919 S.W.2d 777, 782 (Tex. App.—Houston [14th Dist.] 1996, writ denied); *See also Conner v. Guemez*, No. 02-10-00211-CV, 2010 WL 4812991, at *3 (Tex. App.—Fort Worth Nov. 24, 2010, no pet.) (*citing Dallas Cnty. v. Halsey*, 87 S.W.3d 552, 554 (Tex. 2002).

[105] *See Milligan*, 657 S.W.3d at 366 (only within scope of duties).

[106] *Senior Care Living VI, LLC v. Preston Hollow Capital, LLC*, 695 S.W.3d 446, 463 (Tex. App.—Houston [1st Dist.] 2023, no pet.) (vacating limited portion of a Receiver order that was an abuse of discretion).

[107] This Section addresses Issue 5 from Appellant's Brief.

ordinary course of Trust business. Yet, the Order only contemplates an efficient payment mechanism to pay Trust expenses with Trust funds. The parties had previously already agreed for Fran to use Trust Funds to pay the bills following Fran's removal in May 2022,[108] and this Order simply furthers that method. The funds subject to this—despite Appellant's contention—belong to the *Trust* and are not hers. Nonetheless, Appellees proposed a supplemental order to Judge Luna to modify the Order (if necessary) such that the provision requiring Appellant to pay the Trust's expenses *from Trust funds* be modified to moot this issue, and instead have either the Receiver, and/or Vernon pay the bills.[109] Appellees also request that the Court only modify this specific provision from the Order, to the extent it is necessary.

**Issue 3     Does the County Court at Law's March 2022 Order and subsequent Agreed Orders appointing Judge Robert Stem as Trust Advisor and Temporary Administrator of the Spanos Estate preclude the District Court from appointing Aubrey Williams as Receiver if Judge Stem testifies at the evidentiary hearing on the Motion to Appoint Receiver?**

**3.     Judge Luna's Order does not incorporate or enforce any prior orders.[110]**

Appellant argues that Judge Luna's Order is void because it "incorporates the terms of the County Court at Law's order appointing Judge Stem as Receiver . . ."[111]

---

[108] 2.RR.116:18–117:16.
[109] April 4, 2025 Letter from Appellee's Counsel, CR.1308–11.
[110] This Section respond to Appellant's Issue 1.
[111] Appellees assume this is a minor typo as County Court at Law No. 1 appointed Judge Stem Trust Advisor, not Receiver.

28

This argument relies on the improper assumption that Judge Luna's Order incorporated parts of an allegedly void County Court at Law Order and subsequent Agreed Orders that appointed Judge Stem as Trust Advisor. This is a false assumption that Appellant has fabricated. In fact—Judge Luna's Order is *presumed* to be appropriate, unless Appellant demonstrates otherwise—which she cannot.[112]

A plain reading, however, makes clear that Judge Luna's Order makes *no reference* to any prior orders. *Nor* does the Order ever refer to the County Court at Law. No evidence is cited (other than the fact that Judge Stem testified and had opinions and experience with this dispute). In fact, **Appellant's brief admits that Judge Luna's Order does not expressly refer to any order issued by the County Court at Law**. *See* Appellant's Brief at 14 ("***silently*** adopts") (emph. added). Unsurprisingly, there is no case cited for or explanation of this novel theory of "silent" incorporation. At most, Appellant briefly mentions in a footnote that "[t]he district court's Order Appointing Receiver acknowledges, sanctions, and approves the County Court at Law's appointment of Judge Stem as the trust advisor" without any explanation.[113]

---

[112] "Absent such a record [sufficient to show error requiring reversal], we must presume the evidence before the trial judge was adequate to support the decision to appoint a receiver." *C.S.C.S., Inc. v. Reese*, No. 05-96-01112-CV, 1997 WL 142746, at *2 (Tex. App.—Dallas Mar. 31, 1997, no writ) *citing Mays v. Pierce,* 281 S.W.2d 79, 82 (Tex. 1955).

[113] *See* CR.1292, 1295; Appellant's Brief at 13 n. 2.

Appellant's argument appears to be based on the mere fact that Judge Stem testified at the hearing and is referred to as the Trust Advisor in the Order. However, Judge Stem offering testimony does not equate to the District Court enforcing any prior orders. In any event, Appellant did not object to Appellees calling Judge Stem as a witness and therefore waived the issue.[114] And, none of this cures the fact that—despite the "as soon as practicable" directive of the Trust—the sale of the Front 45 has languished for *years* after Dorthy's death.

Appellant's argument would mean that even if the statutory requirements for appointment of Receiver were met, Judge Luna was nevertheless prohibited from appointing a Receiver to sell the Front 45 because the County Court at Law appointed Judge Stem as Trust Advisor three years earlier (without objection and twice by the agreement of all parties). In other words, Appellant seemingly argues that by issuing an allegedly void order, the County Court at Law has somehow deprived the District Court of the ability to appoint a Receiver, even after an evidentiary hearing. That is not (and never has been) the law, and Appellant has cited no authority to the contrary.

Instead, the cases Appellant cites are irrelevant to the issue of whether Judge Luna could appoint Mr. Williams as Receiver. Those cases all involve ***enforcing*** a void order by issuing sanctions for failing to comply, or requiring a

---

[114] *See In Interest of R.V., Jr.*, 977 S.W.2d 777, 780 (Tex. App.—Fort Worth 1998, no pet.).

payment of attorneys' fees in connection with a void order. For example, in *In re Harrison*, a party was held in contempt for violating an order that was void and placed in jail for 120 days.[115] The court held that the contempt order placing the party in jail was void because it enforced a prior void order. In *In re McCray*, an award of attorneys' fees was void and unenforceable because it was issued in connection with a commitment order that was void for failure to include a bond.[116]

Here, Judge Luna's Order did not sanction Appellant. Instead, Judge Luna issued a new, independent order appointing a Receiver for the limited purpose of selling the Front 45.

This case is more akin to *Estate of Hoskins*. There, after decades of litigation in various forums, a district court appointed a Receiver after a full evidentiary hearing.[117] Prior to the court's order, an arbitrator had previously appointed the same Receiver for a term.[118] On appeal, the Court held that even though the district court's order appointed the same Receiver, it was *not* a confirmation of the arbitrator's order.

> Rather than ratifying or approving any of the responsibilities which the arbitrator had previously granted to Rogers, the probate court's order assigned Rogers with a new and distinct set of responsibilities…Rather than confirming the receiver and his previously ordered duties, the probate court's order signifies a new and separate appointment.[119]

---

[115] No. 14-15-00370-CV, 2015 WL 5935816, at *5 (Tex. App.—Houston [14th Dist.] Oct. 13, 2015, no pet.).

[116] No. 05-13-01195-CV, 2013 WL 5969581, at *1 (Tex. App.—Dallas Nov. 7, 2013, no pet.).

[117] *Estate of Hoskins*, 501 S.W.3d at 302.

[118] *Id.*

[119] *Id.* at 303–04.

Here, Judge Luna's Order is similarly distinct and assigns Mr. Williams with responsibilities that were not ordered by the County Court at Law.[120] Judge Luna's Order does not incorporate or enforce any prior orders by the County Court at Law. This Court need not analyze whether the County Court at Law had jurisdiction to issue any orders, especially agreed orders, more than three years ago, that Appellant failed to timely appeal.

It is clear that Appellant is attempting to shoehorn a completely separate issue despite the limited nature of this interlocutory appeal. This is impermissible and a waste of resources.[121]

**Issue 4.A**    **Whether the County Court at Law's earlier Orders are merely voidable and cannot be collaterally attacked?**

**Issue 4.B**    **Is Appellant's collateral attack on the County Court at Law's March 2022 Order and subsequent Agreed Orders appointing Judge Stem as Trust Advisor and Temporary Administrator of the Spanos Estate ripe for appeal when the District Court has not yet ruled on the issue and no statute allows for interlocutory appeal of the denial of a motion to appoint a trustee? In Response to Appellant's Issue No. 3.**

**Issue 4.C**    **If Appellant's collateral attack is ripe for appeal, should the Court set aside the County Court at Law's March 2022 Order and subsequent Agreed Orders appointing Judge Stem as Trust**

---

[120] For example, there is no County Court order that appoints a Receiver or orders the sale of the Front 45.

[121] *See, e.g., Fawcett v. Rogers*, 492 S.W.3d 18, 29 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 352 (Tex. 2001). An appellate court's jurisdiction over an interlocutory appeal is limited to the scope permitted in the statute. *Astoria Indus. of Iowa, Inc. v. SNF, Inc.*, 223 S.W.3d 616, 626 (Tex. App.—Fort Worth 2007, pet. denied); *see also CMH Homes v. Perez*, 340 S.W.3d 444, 447 (Tex. 2011) (strictly apply statutes granting interlocutory appeals).

**Advisor and Temporary Administrator of the Spanos Estate and undo three years of trust of administration when: (1) the Agreed Orders state that the County Court at Law had jurisdiction; (2) the County Court at Law matter is still pending; and (3) Appellant has not timely appealed those orders directly or moved the County Court at Law to set aside the Orders? In Response to Appellant's Issue No. 3.**

**Issue 4.D    Did the County Court at Law have subject matter jurisdiction via original probate jurisdiction and ancillary jurisdiction to issue the March 2022 Order and subsequent Agreed Orders appointing Judge Stem as Trust Advisor and Temporary Administrator of the Spanos Estate? In Response to Appellant's Issue No. 3.**

**4.    The Court has no jurisdiction to consider Appellant's collateral attack on the County Court at Law's prior orders; even if the Court did, Appellant's collateral attack fails on the merits.[122]**

   *A.    Appellant's collateral attack is not ripe for appeal.*

The issue of whether the County Court at Law had subject matter jurisdiction to issue orders appointing Judge Stem as Trust Advisor is not ripe for appeal. Consequently, this Court has no jurisdiction to and should not rule on the issue. To present a complaint for appellate review, the record must establish that a complaint "stat[ing] the grounds for the ruling that the complaining party sought from the trial court" was presented to the trial court, and the trial court ***ruled on or refused to rule on*** the complaint.[123]

---

[122] This Section responds to Appellant's Issue No. 3.
[123] Tex. R. App. P. 33.1.

There is no such showing here, and nothing to appeal. Here, Appellant's collateral attack on the validity of the County Court at Law's prior orders was not raised in response to the Motion to Appoint Receiver that gave rise to this appeal. [124] Rather, that argument was raised in Appellant's Motion to Re-Affirm. Because Judge Luna has not ruled on the Motion to Re-Affirm, Appellant's collateral attack on the County Court at Law's prior orders is not ripe for appeal.

Perhaps in recognition that she needs an order denying her Motion to Re-Affirm to appeal the issue, Appellant submitted a proposed order denying the Motion to Re-Affirm with the trial court on the same date she filed her notice of appeal in this matter. That proposed order, however, is still unsigned. Without a ruling on the Motion to Re-Affirm, the issue is not ripe for appeal.[125] Moreover, the denial of a motion to appoint a trustee does not give rise to a right to interlocutory appeal.[126]

B.    *Appellant cannot collaterally attack the County Court at Law's prior orders because they are not void; they are, at best, voidable.*

Even if the issue of the County Court at Law's subject matter jurisdiction is properly before the Court, Appellant's collateral attack fails because the County

---

[124] *See Fawcett*, 492 S.W.3d at 29.

[125] *Bass v. Waller Cnty. Sub-Reg'l Planning Comm'n*, 514 S.W.3d 908, 915 (Tex. App.—Austin 2017, no pet.) (holding that district court's decision to defer a ruling did not give rise to interlocutory appeal; without a ruling, appellate court had no jurisdiction to consider the appeal).

[126] As it relates to trustees, Section 54.014(a)(1) of the CPRC only allows for interlocutory appeals from an order that appoints a trustee. The Motion to Re-Affirm seeks to have Appellant or Appellant's husband, Rick Shelton, appointed trustee through a collateral attack. It does not seek to remove a trustee because the Trust currently does not have a trustee. Further, the Order does not preclude the appointment of a trustee.

Court at Law's orders are not void on their face.[127] "[T]he validity of the judgment under attack" is presumed, and "[e]xtrinsic evidence may not be used to establish a lack of jurisdiction when collaterally attacking a judgment."[128] "To prevail on a collateral attack, the challenger must show that the judgment is void on its face."[129] "A collateral attack fails if the judgment contains jurisdictional recitals, even if other parts of the record show a lack of jurisdiction."[130] Thus, if the face of the judgment, or orders in this case, recites that the court has jurisdiction, then the judgment cannot be attacked collaterally and must be attacked in the court where it was entered.[131]

Because the face of the March 8, 2022 order that appointed Judge Stem as Temporary Administrator and Trust Advisor recites that the court has jurisdiction, a collateral attack is not proper.[132] This is especially true when Appellant later agreed to extending Judge Stem's appointment as Trust Advisor *before* his initial appointment even expired.[133] It is disingenuous, at best, to object nearly three years

---

[127] *Parsons,* 648 S.W.3d at 357.

[128] *In re D.L.S.*, No. 05-08-00173-CV, 2009 WL 1875579, at *2 (Tex. App.—Dallas July 1, 2009, no pet.) (mem. op.); *see In re A.G.G.*, 267 S.W.3d 165, 169 (Tex. App.—San Antonio 2008, pet. denied).

[129] *In re A.G.G.*, 267 S.W.3d at 169 (*citing Sotelo v. Scherr*, 242 S.W.3d 823, 830 (Tex. App.—El Paso 2007, no pet.)).

[130] *In re D.L.S.*, 2009 WL 1875579, at *2. *See also Parsons*, 648 S.W.3d at 357.

[131] *Id.*

[132] CR.1084–86.

[133] CR.1092–93; CR.1095. Judge Stem's initial appointment was from March 8, 2022 until September 5, 2022. CR. 1084–1086. The County Court at Law undoubtedly had jurisdiction to enter this order as the temporary administration of the estate was ongoing at this time through ancillary jurisdiction. The County Court at Law also maintained jurisdiction to modify this order before its expiration. Prior to the expiration of that order, the County Court at Law signed an Agreed Order to extend Judge Stem's appointment "until such time that the Trust Advisor either

---

and hundreds of thousands of dollars later. If Appellant wanted to attack the County Court at Law's orders, then she should have done so in the court that executed the orders and given that Court the chance to evaluate its finding of jurisdiction in light of the agreements and arguments.

C. *Nevertheless, the County Court at Law had jurisdiction to appoint Judge Stem as Trust Advisor.*

    i. <u>The County Court at Law had jurisdiction over the Trust claims through ancillary jurisdiction.</u>

The County Court at Law had jurisdiction to enter all the orders that Appellant complains of pursuant to its general/concurrent jurisdiction,[134] but certainly under the grant of ancillary jurisdiction under Texas Estates Code § 32.001(b), which provides that, "[a] probate court may exercise pendent and ancillary jurisdiction **as necessary to promote judicial efficiency and economy**."[135] "Typically, probate

---

determines that there is no longer exists a necessity for a Trust Advisor, by agreement of the Parties, or if the Court, in the best interest of the Trust, determines cause exists for the removal of the Trust Advisor." CR. 1093. Thus, the Court retained jurisdiction to enter its order extending Judge Stem's appointment as Trust Advisor indefinitely.

[134] *See* Tex. Gov. Code § 25.0003(d) and Tex. Estates Code § 32.001(a). And—a finding that the amount in controversy requirement is met was certainly within the range or proper findings of the Court. *See* Tex Gov. Code § 25.0003; *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *French v. Moore*, 169 S.W.3d 1, 6 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *supra*. And of course—any complaints about that determination of jurisdiction and jurisdictional amount should have been appealed if an issue and has been long since waived. *See e.g.*, Tex. R. App. P. 26.1 and CPRC § 51.014.

[135] Tex. Estates Code § 32.001 (emphasis added).

courts exercise ancillary or pendent jurisdiction when a close relationship exists between the non-probate claims and the claims against the estate."[136]

Here, the initial filing that conferred original probate jurisdiction to the County Court at Law was filed on March 2, 2022—Application for Appointment of Temporary Administrator of a Trust Advisor.[137] The Application noted that it was suspected that the Decedent (Dorothy J. Spanos) had a "pour over" will—where assets went to this very Trust.[138] Thus, the matter fell squarely in the County Court at Law's probate jurisdiction, and could not be filed in a McLennan County District Court, which lacks probate jurisdiction.[139] For that reason, the County Court at Law properly exercised jurisdiction over any ancillary/pendent and related matters that would promote judicial efficiency and economy—which in this case includes the Trust that was effected by the Estate of Dorothy J. Spanos.

Notably, and despite Appellant's claims, the only statutory limits on jurisdiction—and the retention of it—are that the ancillary or pendant matters be

---

[136] *In re Estate of Hallmark*, 629 S.W.3d 433, 438 (Tex. App.—Eastland 2020, no pet.) (*quoting Narvaez v. Powell*, 564 S.W.3d 49, 57 (Tex. App.—El Paso 2019, no pet.)).

[137] CR.801–12. The Application was initially filed in McLennan County Court, which transferred the Application to County Court No. 1 on March 4, 2022. CR 1117.

[138] Contrary to Appellant's assertion, the fact that the Will is a pour-over will does not diminish the need for an administration, which still requires an inventory and assessment of any debts and claims for or against the Estate. Moreover, not all assets can simply be poured over, such as those that require title to be transferred.

[139] Tex. Estates Code § 32.002. *See also* Tex. Gov. Code § 25.0003(d) which provides that a " . . . statutory county court has, concurrent with the county court, the probate jurisdiction provided by general law for county courts," and Tex. Estates Code § 32.001(a): "All probate proceedings must be filed and heard in a court exercising original probate jurisdiction."

considered by the court to be "necessary to promote judicial efficiency and economy".[140] That was certainly true here, and Appellant agreed by not objecting to Judge Stem's appointment and then signing *two* agreed orders.

The Application discussed issues surrounding the alarming conduct of Appellant, the putative Independent Executor and then Trustee of the Trust, and the need for a Temporary Administrator and Trust Advisor "to ensure (i) that an impartial third party is in place to verify and determine the assets of the Estate and Trust, (ii) that the debts owed to and by the Estate/Trust are timely and appropriately paid, (iii) that the beneficiaries are treated equally, (iv) that assets are not wasted or used in an impermissible manner, and (v) the wishes of [Dorothy Spanos] are honored."[141] Appointing Judge Stem to interpret the Trust and to help guide the parties to resolution certainly furthered the aims of § 32.001(b)—the thrashing around in this case is adequate proof of that fact. As a result, the County Court at Law properly exercised ancillary jurisdiction because the close relationship in the issues involving the Estate and Trust, most notably the "pour over" of assets, from the Estate to the Trust, the conduct of Appellant, the identification and proper ownership of assets, and potential debts owed to the Estate and/or Trust.

---

[140] Tex. Estates Code § 32.001(b).
[141] *See* CR.809.

Appellant's argument that the County Court at Law lacked ancillary jurisdiction because Dorothy Spanos's will was not probated relies on a fundamental misunderstanding of ancillary jurisdiction. Appellant claims that § 31.002(b) defines what may be considered an ancillary matter.[142] This is plainly wrong. Section 31.002(b) defines the "matters related to the probate proceeding" over which the County Court at Law also has original jurisdiction under Texas Estates Code § 32.001(a). Section 31.002(b) has no bearing on ancillary jurisdiction. In fact, the Texas Estates Code has no defined list of what matters fall under a County Court at Law's ancillary jurisdiction.

If Section 31.002 also defines what is ancillary/pendent jurisdiction, then there is no difference between the jurisdiction granted in Section 32.001(a) and the ancillary jurisdiction in Section 32.001(b). Appellant's interpretation would render Section 32.001(b) superfluous.[143] For this reason, whether Dorothy Spanos's will has been probated is irrelevant to the issue of ancillary/pendent jurisdiction.[144]

---

[142] Appellant's Brief at 20 ("However, Section 31.002(b) only permits a county court at law to exercise its pendent or ancillary jurisdiction in a probate matter when the decedent's will 'has been admitted to probate.' TEX. ESTATES CODE § 31.002(b)(3).")

[143] *See Crosstex Energy Services, L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 390 (Tex. 2014).

[144] The Agreed Order on May 19, 2022 recognized that there may still be a need to probate the Spanos will if additional assets are discovered. CR.821–24. In fact, there is at least one asset that Appellees may need to be dealt with through probate.

ii.  Appellant has not met her burden to show that the amount in controversy is not met.

Appellant's argument that the County Court at Law lacked subject matter jurisdiction because the amount in controversy requirement is not met should similarly be rejected. The amount in controversy requirement does not apply to a County Court at Law sitting in probate jurisdiction, and Appellant has not presented proof to negate the amount in controversy.) As stated by the Supreme Court in *English v. Cobb*,

> A close reading of the statute reveals that the Angelina County Court at Law at Law is not subjected to a jurisdictional limit, either minimum or maximum, When the court sits in probate. Rather, the $10,000.00 jurisdictional limit on the amount in controversy applies only to those Civil cases where the County Court at Law Exercises concurrent jurisdiction with the district court. The limitation does not apply to those cases being tried in the County Court at Law under its probate jurisdiction.[145]

To negate jurisdiction in this matter, the movant must thus either challenge the pleadings or challenge the jurisdictional facts with evidence.[146] Appellant has not presented proof to counter any jurisdictional facts and pointed out nothing on the face of the pleadings that affirmatively negated jurisdiction for a County Court at Law sitting in probate jurisdiction.

---

[145] *English v. Cobb*, 593 S.W.2d 674, 675 (Tex. 1979). Section 32.001 itself confirms this reading, as it makes no reference at all to amounts in controversy limitations.
[146] *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

To the extent the Court finds that the claims must meet the amount in controversy limits of court courts at law, Appellant's challenge still fails. First, the Application did not assert a claim seeking monetary relief. Second, Appellant's claim that the imputed real estate value should be considered the amount in controversy is meritless. This was not a fight over title (nor was the Trust Advisor to own it). Instead, Judge Stem was to be appointed Trust Advisor, in part, to interpret the Trust. *See* § 4.07(e) of the Trust. Yet, in the Application there *was* mention of Fran's waste of Trust assets—spending $48,000.00 on security guards[147], and paying substantial costs out of the Trust ($8,000.00) to her husband[148] that the Trustee to be appointed by the Trust Advisor should have investigated and recovered. Those amounts are clearly within the amount in controversy limits. Moreover, the Application sought the appointment of a third-party neutral to determine if there any probate assets or debts of the estate, investigate if any claims for or against the estate existed based on Fran's conduct, interpret the Trust provisions, and oversee Fran's actions, whether as Independent Executor or Trustee.

### iii. The County Court at Law never lost jurisdiction.

The County Court at Law never lost ancillary jurisdiction because the Estate was not closed, and jurisdiction, once established, is presumed to continue.

---

[147] CR.806.
[148] *Id*.

Texas Estates Code § 32.001(d) states, "[t]he administration of the estate of a decedent, from the filing of the application for probate and administration, or for administration, until the decree of final distribution and the discharge of the last personal representative, shall be considered as one proceeding for purposes of jurisdiction."[149]

Here, the Estate was never closed for jurisdictional purposes because there has never been a decree of final distribution.[150] Moreover, the May 19, 2022, Agreed Order discharging Judge Stem as Temporary Administrator *expressly contemplated* collection of assets or debts, and a possible future need to probate the will of Dorothy J. Spanos.[151] Thus, the Estate continues, which certainly means that ancillary jurisdiction continues.[152] Indeed, the very orders Appellant agreed to, and about which she now complains, bear the style of the *Estate*.

The case relied upon by Fran for the claim that jurisdiction is somehow lost is *Goodman v. Summit at West Rim*, 952 S.W.3d 930 (Tex. App.—Austin 1997, no pet). *Goodman* involved an earlier version of the Probate Code (§ 5A), and while

---

[149] Tex. Estates Code § 32.001.

[150] *See Goodman v. Summit at W. Rim, Ltd.*, 952 S.W.2d 930, 934 (Tex. App.—Austin 1997, no pet.) (holding that the Court lost jurisdiction only when the estate closed and the estate was dismissed from the proceeding). Here, the Estate was not closed, and the Estate has not been dismissed.

[151] *See* CR.821. Appellant's prior counsel even filed a vacation letter in the Estate proceeding in March 2023 indicating it remains open. CR.1119.

[152] *Sabine Gas Transmission Co. v. Winnie Pipeline Co.*, 15 S.W.3d 199 (Tex. App—Houston [14th Dist.] 2000, no pet.); *Citizens Bank & Tr. Co. of Baytown v. Ertel*, No. 01-98-00548-CV, 2001 WL 26141 (Tex. App.—Houston [1st Dist.] Jan. 11, 2001, pet. denied).

it *did* hold there that the Court lost jurisdiction—the holding was *not* based on statutory language *or* any case actually interpreting Probate Code § 5A in that manner.[153] The *Goodman* Court also *mistakenly* noted that in Federal cases jurisdiction was supposedly lost over pendant claims if the underlying Federal jurisdiction bases is lost—yet that was not accurate—a Federal Court has the discretion to retain and adjudicate pendant claims. *See Mendoza v. United States,* 481 F.Supp.2d 643, 648–49 (W.D. Tex. 2006) *aff'd. sub nom.* 532 F.3d 342, 346–47 (5th Cir. 2008).[154]

**Instead, the nature of jurisdiction is such that once it attaches, it continues**. The general rule is, "when a court of competent jurisdiction has become possessed of a case, its authority continues, subject only to the appellate authority, until the matter is finally and completely disposed of; and no court of co-ordinate authority is at liberty to interfere with its action."[155] Thus, when the County Court at Law obtained jurisdiction, the jurisdiction continued.

---

[153] Instead, *Goodman* cites *In re Estate of Hanau*, 806 S.W.2d 900 (Tex. App.—Corpus Christi-Edinburg 1991, writ denied)—which involved an attempt to "remove" an Independent Executor where the Independent Executor had been previously discharged by law. It also cited *Bailey v. Cherokee Cnty. Appraisal Dist.*, 862 S.W.2d 581 (Tex. 1993) for the unremarkable proposition that for jurisdiction to attach to an ancillary matter, there must first be a probate matter pending. *Goodman*, 952 S.W.2d at 933. That of course, is not an issue here.

[154] And the considerations are like Tex. Estates Code § 32.001(b)—efficiency and judicial economy.

[155] *Elliott v. Elliott*, 208 S.W.2d 709, 712 (Tex. App.—Fort Worth 1948, writ ref'd n.r.e.).

This idea of continuing jurisdiction fits with the statute that grants the authority for jurisdiction in the first place, because it supports judicial efficiency to keep the ancillary matters in a court that has already spent significant time and resources on it.[156] Additionally, Appellant's argument would create a loophole where a court exercising original probate jurisdiction could maintain or lose ancillary jurisdiction simply by deciding whether to resolve the probate estate matters before or after the ancillary matters. There is simply no statutory authority for the idea that the County Court at Law lost jurisdiction.[157]

Additionally, Appellant points to several exhibits in an attempt to "prove" that the County Court at Law supposedly never had or lost jurisdiction when the temporary administration was discharged.[158] Although that contention is incorrect, a party cannot use evidence to support a collateral attack of a judgment[159] (much less an Agreed Order). As explained by the Court in *Parsons*:

> "[T]he validity of the judgment under attack" is **presumed**, and "[e]xtrinsic evidence may not be used to establish a lack of jurisdiction when collaterally attacking a judgment." (cit. omitted). **"To prevail on a collateral attack, the challenger must show that the judgment is void on its face."** (cit. omitted) **"A collateral attack fails if the judgment contains jurisdictional recitals, even if other parts of the record show a lack of jurisdiction."**[160]

---

[156] *See* Tex. Estates Code § 32.001.
[157] *See* fn 135.
[158] *See generally* Appellant's Brief 12–26.
[159] *Parsons*, 648 S.W.3d at 357.
[160] *Id.* (emph. added).

Because Appellant needs the evidence attached as exhibits to prove her allegation that jurisdiction was lost, her collateral attack fails.

    iv.    The doctrines of waiver and estoppel bar Appellant's collateral attack.

Separate and apart from the arguments above, two additional bases preclude the arguments espoused by Appellant: the doctrines of waiver and estoppel. A case that is analogous in a different context and procedural posture is *S.M.*[161] In *S.M.*, the appellant agreed to a protective order and then, over the course of several years, filed Motions to Vacate, alleging several grounds including that the order itself was void.[162] The court rejected these arguments, and held that, even if there were errors, the order was voidable and not void, which means it could only be attacked on direct appeal.[163] In so holding, the court emphasized the existence of the agreement:

> **In analyzing the appeal before us, we cannot overstate the importance of the fact that Molinar agreed to the protective order**.[164]

This result makes logical sense because the well-settled rule is that "[e]rrors that make a judgment voidable are subject to waiver and must be preserved pursuant to Texas Rule of Appellate Procedure 33.1."[165]

---

[161] 658 S.W.3d 876, 877 (Tex. App.—El Paso 2022, no pet.).
[162] *Id.* at 878.
[163] *Id.* at 880–81.
[164] *S.M.*, 658 S.W.3d at 880 (*quoting Torres v. State*, No. 08-19-00209-CR, 2021 WL 3400598, at *4 (Tex. App.—El Paso Aug. 4, 2021, no pet.)).
[165] *In Interest of M.L.G.J.*, No. 14-14-00800-CV, 2015 WL 1402652, at *3 (Tex. App.—Houston [14th Dist.] Mar. 24, 2015, no pet.).

Moreover, Texas Supreme Court precedent is clear that "[a]s a general rule, the doctrine of estoppel precludes a litigant from requesting a ruling from a court and then complaining that the court committed error in giving it to him."[166]

This principle is rooted "in justice and dictated by common sense."[167] Indeed, as explained by the court in *Travelers Ins. Co. v. Williams*:[168]

> An agreed judgment is not open to attack on appeal on the ground that the undisputed evidence shows error in the decree. *See Alexander v. Alexander*, 373 S.W.2d 800 (Tex. Civ. App. Corpus Christi 1963, no writ). **A party who by agreement induces the trial court to enter judgment is thereafter estopped from denying its validity**.[169]

The orders in question are similarly enforceable as Rule 11 Agreements. There can be no question that "[a]n enforceable Rule 11 agreement about an issue constitutes an express waiver of the prior dispute about that issue on appeal."[170]

## CONCLUSION AND PRAYER FOR RELIEF

For each of these reasons, Appellees request that the Court affirm Judge Luna's Order.

---

[166] *Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 861 (Tex. 2005).
[167] *Id.*
[168] 603 S.W.2d 258, 262 (Tex. Civ. App.—Corpus Christi 1980, no writ).
[169] *Williams*, 603 S.W.2d at 262 (emph. added).
[170] *Tex. A&M Concrete, LLC v. Brae Burn Constr. Co., Ltd., L.L.P.,* 651 S.W.3d 607, 619 (Tex. App.—Houston [1st Dist.] 2022, no pet.).

Respectfully submitted,

_____
Andy E. McSwain
State Bar No. 13861100
mcswain@thetexasfirm.com
Mark E. Firmin
State Bar No. 24099614
firmin@thetexasfirm.com
Sameer Hashmi
State Bar No. 24101877
hashmi@thetexasfirm.com
BEARD KULTGEN BROPHY BOSTWICK
& DICKSON PLLC
220 South Fourth Street
Waco, Texas 76701
(254) 776-5500
(254) 776-3591 (fax)
**ATTORNEYS FOR APPELLEE**
**VERNON LEUSCHNER (for and on**
**behalf of KATHERINE LEUSCHNER)**

Jim Dunnam
State Bar No. 06258010
jimdunnam@dunnamlaw.com
Andrea Mehta
State Bar No. 24078992
andreamehta@dunnamlaw.com
Mason Vance Dunnam
State Bar No. 24108079
masondunnam@dunnamlaw.com
DUNNAM & DUNNAM LLP
4125 West Waco Drive
Waco, Texas 76710
(254) 753-6437
(254) 753-7434 (fax)
**ATTORNEYS FOR APPELLEES**
**ROBERT LEE SPANOS,**
**CHRISTOPHER BLAKE SPANOS,**
**AND KATHRYN NICOLE LAWRIE**

## CERTIFICATE OF SERVICE

Pursuant to Texas Rules of Appellate Procedure 9 and Civil Procedure 21a, I hereby certify that on the 25th day of August, 2025, I served the foregoing document upon all other parties as follows:

| | Via: |
|---|---|
| Kirk L. Pittard<br>kpittard@dpslawgroup.com<br>Rick Thompson<br>rthompson@dpslawgroup.com<br>DURHAM, PITTARD &<br>SPALDING, LLP<br>P.O. Box 224626<br>Dallas, Texas 75222<br><br>Craig D. Cherry<br>ccherry@cjsjlaw.com<br>Ryan C. Johnson<br>rjohnson@cjsjlaw.com<br>Scott H. James<br>sjames@cjsjlaw.com<br>M. Katie Quillen<br>kquillen@cjsjlaw.com<br>CHERRY JOHNSON SIEGMUND<br>JAMES, PLLC<br>7901 Fish Pond Road, 2nd Floor<br>Waco, Texas 76710<br><br>**ATTORNEYS FOR APPELLANT**<br>**FRANCES SPANOS SHELTON** | ☒ Efile.TXCourts.gov<br>☐ Hand delivery<br>☐ U.S. Mail<br>☐ Commercial Delivery Service<br>☐ Fax #_____<br>☐ Email<br>☐ Other (as directed by the Court) |
| Jim Dunnam<br>jimdunnam@dunnamlaw.com<br>Andrea Mehta<br>andreamehta@dunnamlaw.com<br>Mason Vance Dunnam<br>masondunnam@dunnamlaw.com | **Via:**<br>☒ Efile.TXCourts.gov<br>☐ Hand delivery<br>☐ U.S. Mail<br>☐ Commercial Delivery Service<br>☐ Fax #_____ |

| DUNNAM & DUNNAM LLP<br>4125 West Waco Drive<br>Waco, Texas 76710<br><br>**ATTORNEYS FOR APPELLEES<br>ROBERT LEE SPANOS,<br>CHRISTOPHER BLAKE SPANOS,<br>AND KATHRYN NICOLE<br>LAWRIE** | ☐ Email<br>☐ Other (as directed by the Co |
| --- | --- |

Andy E. McSwain
Attorney for Appellee Vernon Leuschner (for and
on behalf of Katherine Leuschner)

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Texas Rule of Appellate Procedure 9.4(i)(2)(B) because the brief contains 14,753 words, excluding the parts of the brief exempted by Texas Rule of Appellate Procedure 9.4(i)(1). I am relying on the word count function of Microsoft Word for the word count.

This brief complies with the typeface requirements of Texas Rule of Appellate Procedure 9.4(e) because the brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in Times New Roman, with 14 point text and 12 point footnotes.

Dated: August 25, 2025.

_____

Andy E. McSwain
Attorney for Appellee Vernon Leuschner (for and on behalf of Katherine Leuschner)

NO. 15-25-00072-CV

_____

IN THE COURT OF APPEALS
FOR THE FIFTEENTH DISTRICT OF TEXAS
AUSTIN, TEXAS

_____

FRANCES SPANOS SHELTON,

*Appellant,*

v.

VERNON LEUSCHNER, ROBERT LEE SPANOS, CHRISTOPHER BLAKE
SPANOS, KATHRYN NICOLE LAWRIE, AND KATHERINE LEUSCHNER,
*Appellees.*

_____

Interlocutory Appeal from the 414th Judicial District Court, McLennan County,
Texas, Cause No. 2024-3035-5, Hon. Ryan Luna, Presiding

_____

**APPENDIX TO JOINT BRIEF OF APPELLEES**

_____

| Tab | Description | Record Pages |
|-----|-------------|--------------|
| 1. | Map of Fran's Proposal | 3.RR.ExhibitI-3 |
| 2. | Judge Stem's letter dated October 20, 2022 | 3.RR.ExhibitI-2; CR.562–64 |
| 3. | Judge Stem's Proposal | CR.566 |
| 4. | Judge Stem's May 3, 2023 letter | 3.RR.ExhibitI-4; CR.568 |
| 5. | *Ex Parte* Temporary Restraining Order | 3.RR.ExhibitI-5 |

# TAB 1
## Map of Fran's Proposal

# TAB 2
Judge Stem's letter dated October 20, 2022



# Robert Stem

Senior District Judge
State of Texas
Mediator

108 Bridge St
Marln, Texas 76661

(254) 214-4401

rstemfairis@gmail.com
judgerobertstem.com

October 20, 2022

To Danny Palmer, via email

To Mark Firman, via email

To Jim Dunnam, via email

To Julia Jurgensen, via email

To Andy McSwain, via email

Good afternoon Counsel:

I have reviewed in detail the Trust provisions set forth in Article Four regarding the powers and duties of the Trust advisor. Attached is the division of the Spanos Ranch that is consistent with the intent of Dorothy Spanos that she set forth in the amended trust.

Section 4.07(e) of the Trust confers to the Trust Advisor the power to construe the terms of the Trust Instrument, and the specific language is:

> " The Trust Advisor may settle any disputes concerning the
> Interpretation of any provision contained in this instrument
> that arise as a result of any perceived ambiguity. In doing so
> the role of the Trust Advisor is to ensure that the instrument
> is construed in a manner consistent with my Estate planning
> objectives"

I have met with you and most of your clients on more than one occasion in order to listen to concerns, perspectives and opinions as they relate to the proper division of the Spanos ranch. There is a significant dispute on how to divide this property in many aspects, and specifically the interpretation of the amended trust on page 4 regarding the sale of the house and surrounding acreage, quoted as follows:

> " The existing house; RV shed; hangar; and 39.322 acres including
> Runway, front pasture, and pasture behind the home to be sold…"

There is no language in the Amended Trust that can justify sectioning out any acreage in the front pasture ….. all of that property is intended to be sold.
Additionally, it is clear that Dorothy intended that the back pasture be included in the sale and I have resolved that dispute and perceived ambiguity by the attached plat. It does add additional land to be sold, but that is required to carry out her wishes to include the back pasture.
In the process of resolving that dispute, the amount of acreage divided (with the exception of the five 12 acre tracts) will naturally change in some small degree. Part of this is due to the fact that from the deed references and surveys, the Spanos Ranch encompasses approximately two acres less than originally understood. This is another ambiguity that has been resolved by

J-2

this division. The exact acreage will need to be tweaked by the official surveyor, but following the general division set forth in the attached plat.

The attached Plat also maximizes the value of the property that Dorothy Spanos directed and intended to be sold.

Once again, I appreciate the time that you and your clients have shared with me.
On a personal note, I have gained, at the very least, a glimpse into the beautiful, loving and generous spirit of Dorothy Spanos.
It is abundantly clear that she held a deep and sincere love and affection for her two daughters, son's in law, and grandchildren, with the future being secured for each one to enjoy and share, as a gift from her, a portion of the Ranch.
She wanted the family legacy to continue so that all could enjoy the Spanos Ranch going forward and recall the special memories generated by decades of family gatherings and events. A simple walk through the Spanos Ranch home immediately evokes the essence of respect and admiration for this awesome and incredible couple, with the vision and desire that the family members continue to enjoy and share what they had worked so very hard to create.

So, with that said, I feel assured and comfortable that Dorothy's wishes have been carried out by this property division.

As Trust advisor, I am directing the Trustee, Fran Shelton, contact a qualified surveyor within 10 days of today's date to commence the process of division as per the attached plat. Please notify me and all attorneys of record the name and contact information for the surveyor.

Sincerely,

Robert Stem
Trust Advisor
Dorothy Spanos Trust

12 Acres
Nicole

12 Acres
Chris

57.85 Acres
Kathy

41 Acres
Bobby

57.85 Acres
Fran

12 Acres
Brianna

12 Acres
Brandon

12 Acres
Nick

Flying ND Ranch Airport

45.2 Acres
Main House

185

# TAB 3
Judge Stem's Proposal



# TAB 4
Judge Stem's May 3, 2023 letter



# Robert Stem

Senior District Judge
State of Texas
Mediator

108 Bridge St.
Marlin, Texas 76661

(254) 214-4401

rstemfalls@gmail.com
judgerobertstem.com

May 3, 2023

Mr. Danny Palmer
Haley & Olson
100 Ritchie Road #200
Waco, Texas 76712
Via email: dpalmer@haleyolson.com

Re: Dorothy Spanos Trust

Dear Danny:

I have reviewed the request from Counsel for Kathy Leuschner, Bobby Spanos, Nicole Lawrie, and Chris Spanos to remove Frances Shelton as Trustee. I have also reviewed and taken into consideration your response, as well as all the facts and circumstances that have transpired since my appointment as trust advisor over a year ago.

The Dorothy Spanos Trust is in need of a truly neutral, detached and independent trustee.

As trust advisor, I am exercising the power set forth in Section 4.07(c), and removing Frances Shelton as Trustee. This emailed letter, sent simultaneously to all Counsel, will serve as written notice to Frances Shelton of her removal through her Attorney of Record. Rick Shelton, as Successor Trustee is not an appropriate substitute trustee, and this letter will serve as written notice to him. In the event you are unable to accept notice on behalf of Rick Shelton, please let me know and I'll proceed to send the appropriate notice.

I have contacted Attorney John Malone, and he has agreed to accept the appointment as Successor Trustee. Under Sections 3.08 and 4.07 of the Trust, John Malone will be appointed as the Special Independent Trustee of the Dorothy Spanos Trust. John Malone is copied on this group email which will serve as written notice of his appointment.

Please contact John Malone in order to provide the necessary initial documents to begin the transition. I am also available to set up a time to have a joint visit with John Malone to speed up the process.

Sincerely,

Robert Stem
Trust Advisor
Dorothy Spanos Trust

**EXHIBIT**

I-4

# TAB 5
*Ex Parte* Temporary Restraining Order

CASE NO. 2024- 3035- 5

FRANCES SPANOS SHELTON, §
§
   Plaintiff, §
§
v. §
§
JOHN MALONE AS TRUSTEE OF §
THE DOROTHY SPANOS LIVING §
TRUST §
§
   Defendant. §

IN THE DISTRICT COURT

MCLENNAN COUNTY, TEXAS

414th JUDICIAL DISTRICT

## TEMPORARY RESTRAINING ORDER

The Court, having considered Plaintiff's Verified Original Petition and Request for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction ("Verified Petition") filed by Plaintiff FRANCES SPANOS SHELTON ("Plaintiff") along with the supporting evidence, arguments, and law, and finds that Plaintiff's Application for Temporary Restraining Order against Defendant John Malone as Trustee of the Dorothy Spanos Living Trust ("Defendant") should be, and hereby is, **GRANTED**. Accordingly, the Court makes the following findings and orders:

Based on the allegations in the Verified Petition, the Court finds that it has personal jurisdiction over the parties, jurisdiction is proper in this Court, and venue is proper in this Court as all or a substantial part of the events or omissions giving rise of Plaintiff's claims occurred in McLennan County.

Based on the allegations in the Verified Petition, the Court further finds that there is a probability of success on the merits of the following: that Defendant John Malone is the trustee of the Dorothy Spanos Living Trust ("the Trust") and that Plaintiff is a beneficiary of the Trust.

**TEMPORARY RESTRAINING ORDER**                                Page 1 of 4
*Frances Shelton v. John Malone as Trustee of the Dorothy Spanos Living Trust*

EXHIBIT

I-5

The Court finds that Defendant owed, and continues to owe, Plaintiff certain fiduciary duties, including the duties of loyalty, good faith and fair dealing, to make a full disclosure, and candor to Plaintiff. The Court further finds that Defendant failed to act in the best interest of Plaintiff by (a) proposing to burden Plaintiff's proposed tract with two unnecessary easements to benefit some beneficiaries at Plaintiff's expense; (b) devaluing the Trust Property[1] for the benefit of some beneficiaries at Plaintiff's expense; (c) consistently and invariably making decisions that benefit some beneficiaries at the expense of others; (d) refusing to consider reasonable alternatives to burdening Plaintiff for the benefit of another beneficiary; (e) refusing to discuss his rationale for making decisions that are detrimental to Plaintiff's interest in the Trust Property; (f) increasing the value of other beneficiaries' proposed tracts at the expense of significantly devaluing Plaintiff's proposed tract; and (g) attempting to deprive Plaintiff of the acreage she is entitled to under the plain language of the Trust and First Amendment to the Dorothy Spanos Living Trust ("First Amendment"). Defendant's failure to act in Plaintiff's best interest constitutes a breach of Defendant's fiduciary duties.

Plaintiff has a probable right of recovery in this action. In addition, Plaintiff will suffer immediate and irreparable harm to her expectancy interest in the Trust Property as a proximate result of Defendant's breach of his fiduciary duties to Plaintiff.

The issuance of an injunction will in all respects serve the public good, as beneficiaries who are owed fiduciary duties by trustees must be protected, and trustees should not be permitted to breach their fiduciary duties to beneficiaries.

If Defendant is not enjoined as requested herein, Plaintiff's expectancy interest in the Trust property is threatened, thereby causing irreparable harm to Plaintiff's expectancy interest.

---

[1] The Trust Property is defined on page 2 of the Verified Petition. The term is used consistently with the Verified Petition hereinafter.

The damage that will be caused to Plaintiff by Defendant's probable and actual breach of fiduciary duty cannot be adequately compensated by money damages, leaving Plaintiff with no adequate legal remedy. Unless Defendant, and all others through or with whom Defendant is acting, is enjoined as requested herein, Plaintiff will suffer irreparable injury and harm for which she lacks an adequate remedy at law.

Based on the allegations in the Verified Petition, the Court finds that Plaintiff will suffer imminent and irreparable harm unless Defendant is immediately restrained and enjoined as set forth below.

Consequently, the Court finds that a temporary restraining order is necessary because of the actual threatened harm to Plaintiff's expectancy interest in the Trust Property, as it appears to the Court that Defendant is presently engaged in, or will engage in, a breach of his fiduciary duties to Plaintiff, such that immediate relief is necessary to protect Plaintiff's rights pending a hearing on the matter.

Accordingly, it is hereby **ORDERED** that Defendant and his agents, servants, employees, attorneys, and those in active concert or participation with him, are temporarily enjoined from engaging in the following acts during the pendency of this litigation or until such time as the Court orders otherwise:

(a) executing any easement, right-of-way, or right-of-access agreement pertaining to the Trust Property;

(b) granting or conveying any easement, right-of-way, or right-of-access agreement pertaining to the Trust Property; and

(c) from partitioning, disposing of, selling, or conveying any of the Trust Property.

The above restrictions are reasonably and narrowly tailored to that necessary to protect Plaintiff's expectancy interest in the Trust Property.

It is furthered **ORDERED** that the hearing on Plaintiff's Application for Temporary Injunction shall commence on _November 6_, 2024 at _10:00_ (a.m.)/p.m. in the _414_ Judicial District Court, McLennan County, Texas.

The bond requirement has not been waived. It is therefore further **ORDERED** that, prior to the issuance of such a Temporary Restraining Order, Plaintiff shall file a bond with the McLennan County District Clerk in the amount of $ _5000_, which amount this Court finds will adequately protect the interests of Defendant, pending a hearing on Plaintiff's Application for Temporary Injunction.

This Order was issued *ex parte* and without notice due to the nature of the immediate and irreparable injury described herein, as well as the loss and damage that will result to Plaintiff before notice can be served and a hearing had thereon.

It is further **ORDERED** that the Clerk shall issue a Writ of Injunction incorporating this Temporary Restraining Order. This order expires on _November 8_, 2024.

Signed at _12:15_ o'clock a.m./p.m. on the _25_ day of October 2024.

_____
Judge Presiding

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Sarah Rowell on behalf of Andy McSwain
Bar No. 13861100
Rowell@thetexasfirm.com
Envelope ID: 104823317
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: Joint Brief of Appellees with Appendix
Status as of 8/26/2025 7:10 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Kirk Pittard | | kpittard@dpslawgroup.com | 8/25/2025 4:56:55 PM | SENT |
| Angus McSwain | 13861100 | mcswain@thetexasfirm.com | 8/25/2025 4:56:55 PM | SENT |
| James Dunnam | 6258010 | jimdunnam@dunnamlaw.com | 8/25/2025 4:56:55 PM | SENT |
| Craig Cherry | 24012419 | ccherry@cjsjlaw.com | 8/25/2025 4:56:55 PM | SENT |
| Mark Firmin | 24099614 | firmin@thetexasfirm.com | 8/25/2025 4:56:55 PM | SENT |
| Jenn Haring | | jharing@cjsjlaw.com | 8/25/2025 4:56:55 PM | SENT |
| Scott James | | sjames@cjsjlaw.com | 8/25/2025 4:56:55 PM | SENT |
| Michala Quillen | | kquillen@cjsjlaw.com | 8/25/2025 4:56:55 PM | SENT |
| Ryan Johnson | | rjohnson@cjsjlaw.com | 8/25/2025 4:56:55 PM | SENT |
| Sarah Rowell | | rowell@thetexasfirm.com | 8/25/2025 4:56:55 PM | SENT |
| Ashley Snyder | | snyder@thetexasfirm.com | 8/25/2025 4:56:55 PM | SENT |
| Mason Dunnam | | masondunnam@dunnamlaw.com | 8/25/2025 4:56:55 PM | SENT |
| Rick Thompson | | rthompson@dpslawgroup.com | 8/25/2025 4:56:55 PM | SENT |
| Kelly Blackburn | | efile@dpslawgroup.com | 8/25/2025 4:56:55 PM | SENT |
| Kelli Bassett | | kbassett@cjsjlaw.com | 8/25/2025 4:56:55 PM | SENT |
| Andrea Mehta | | andreamehta@dunnamlaw.com | 8/25/2025 4:56:55 PM | SENT |
| Kiley Coats | | coats@thetexasfirm.com | 8/25/2025 4:56:55 PM | SENT |
| Sameer AHashmi | | hashmi@thetexasfirm.com | 8/25/2025 4:56:55 PM | SENT |